BRALEY *v.* ARKHOLA SAND & GRAVEL COMPANY.

4-6659                                        159 S. W. 2d 449

Opinion delivered March 9, 1942.

*Miles & Young,* for appellant.

*Warner & Warner,* for appellee.

McHANEY, J.   Appellant Mrs. Fannie Braley is the mother of appellant Mrs. Lucy West, who is the wife of Sam West. They all live together in the West home in Lavaca, Sebastian county. Mrs. Braley's first husband was a Mr. Cason, who died about 45 years ago, the owner of the 80 acre tract of land here in controversy, and on which he and his wife resided and which was their homestead. Mrs. Cason thereafter married a Mr. Braley, with whom she lived a short time until they separated, and since that time she has lived in the home of the Wests. West is a prominent citizen in the town of Lavaca and is the cashier of the bank there.

On May 19, 1941, appellee Graue, an employee of the appellee, Arkhola Sand & Gravel Company, hereinafter referred to as the Company, went to Lavaca in behalf of

the Company for the purpose of getting three gravel leases from owners of lands in that vicinity. He had been there a few days before, looking over gravel pits then existing on the "Braley Place." On said date, he contacted Mr. West and sought his assistance in getting leases, and West thought he could get the leases, so he left an option agreement for the "Braley Place" with West, to which was attached a form of lease agreement which was to be executed by Mrs. Braley in, case the Company exercised the option within 120 days given therein. The option provided for the exclusive right of the Company to take gravel from said lands and Mr. West suggested that it be changed to except the county highway department from the exclusive provision because it already had a prior lease giving it the right to take gravel therefrom, and this change was made. Graue went back to see West the following morning and West had secured the option for the Braley lease from Mrs. Braley and an option for a lease on the lands of one Powers, for which he paid West by check or draft $100 for the Braley option and $25 for the Powers option. The Braley option was taken in the name of Graue, was acknowledged by Mrs. Braley before West, a notary, and was recorded and assigned by Graue to the Company. Graue made no investigation of the title to the land, but just assumed that Mrs. Braley was the owner, nor did he know West was a son-in-law of Mrs. Braley, or that she lived with the Wests. Thereafter West rendered a bill for his services in procuring lease options to the Company for $15 and it was paid.

The Company entered upon the Braley land and explored its possibilities for gravel, and, within the time allowed, exercised its option to take the lease, and so notified Mrs. Braley on September 2, 1941, by letter which was received. On September 6, 1941, Mrs. Braley answered this letter, advising that she could not execute the lease "for the reason this property does not belong to me at this time and I doubt that I had the right to give the option at the time I did it. Further the lease does not provide that you will take any gravel whatever from the property and it would be unfair to allow you or any-

one else to tie this property up without agreeing to take so much gravel from the property. However, I do not own this property and I cannot execute a lease to you. I am returning the $25 I received when the option was executed.'' The lease form provided for payment by the lessee of five cents per yard for the gravel taken and she or Mr. West for her was paid $100 for the option, but a tender back of only $25 was made, which was not accepted and was returned to her.

As previously stated, Mrs. Braley had orally granted a lease to remove gravel, or the right to do so, on the same terms, to Sebastian county in the spring of 1941, which lease or right was procured by the assistant road supervisor for the county in the same way, that is through Mr. West, and a quantity of gravel was removed by the county and paid for in the sum of $92, she filing the claim therefor.

It appears that Mrs. Braley did not own the land in controversy, but had only a dower and homestead right therein; and that the remainder in fee was owned by her daughter, Mrs. West, and a grandson, Joe E. Cason, a resident of Texas. On August 18, 1941, Mrs. Braley and Joe E. Cason and his wife conveyed said lands by warranty deed to appellant Lucy Cason West for a consideration of $1 ''and other good and valuable consideration.''

On this state of facts appellees brought this action against appellants and Sam West for specific performance of the contract to lease. The answer was a general denial, and an amended answer alleged that the contract was void for lack of consideration, and that, while it provided payment of five cents per yard for all gravel produced, it did not provide that the lessee would be required to remove any amount of gravel. Trial resulted in a decree against appellants as prayed. This appeal followed.

It is argued for appellant, Mrs. Braley, that she had no right to execute an option to lease to the Company and that same is invalid ''because she only had a homestead and dower interest in said property,'' and the cases of *Cherokee Construction Co.* v. *Harris*, 92 Ark. 260, 122 S. W. 485, 135 Am. St. Rep. 177, and *Lee* v. *Straughan*,

146 Ark. 504, 226 S. W. 171, are cited to support the contention. These cases do not support her in this contention. It is undisputed that she owns a homestead and dower interest in this land, and that she executed the option to lease it to Graue for the Company, and we think appellees, or appellee Company, is entitled to require her specifically to perform in so far as it lies within her power so to do. If her title is defective, and apparently it is, as she did not own the fee, then appellees will get only such title as she has in this proceeding. Whether the taking of gravel from said property by appellees under a lease from the life tenant will constitute waste, and, therefore, subject to be enjoined by the fee owner, is not here determined. It does appear, however, that gravel pits have already been opened on said lands and that gravel has been and perhaps now is being removed therefrom, and it may be that such continued removal by appellees would not be waste under the law in this regard. But if so, Mrs. Braley has breached her contract to lease and might be liable, in an appropriate action, for the damages, if any, sustained by appellees, as also Sam West who undoubtedly knew the state of the title of his mother-in-law, yet who undertook, as the paid agent of appellees to get them a valid option to lease the property. The decree as to Mrs. Braley will, therefore, be affirmed.

As to that part of the decree which requires Mrs. West to perform, a different situation exists. She did not sign the option contract, and, so far as this record discloses, knew nothing about it. The fact that her husband secured the contract from her mother and that they were all living together in the same home without further proof of either facts or circumstances bringing home to her knowledge of all the facts is insufficient to establish either agency of the husband for her or *estoppel in pais* to assert her rights.

Counsel for appellees cite and rely on such cases as *Edwards* v. *Jones,* 197 Ark. 229, 123 S. W. 2d 286, and *Rone* v. *Sawrey,* 197 Ark. 472, 123 S. W. 2d 524, to support their theory of estoppel. In the latter case, we quoted from 21 C. J. 1152, § 155b the following: "Where a person

stands by and sees another about to commit or in the course of committing an act infringing upon his rights and fails to assert his title or right, he will be estopped afterwards to assert it." In that case the widow owned the homestead rights in 160 acres of land. She conveyed one and one-fourth acres to the trustees of a church for a building site. A church house was being built to the knowledge of the heirs, one of whom worked on the building when the widow died and the four heirs conveyed to a grantee who brought suit to enjoin the construction of the church. We held that while the widow had no right to convey, the heirs were estopped to so assert, as also their grantee. In this case there is no evidence that Mrs. West knew of the contract by her mother and neither was it shown that she knew that appellees had entered upon said land for exploration purposes or that they had spent any money in so doing, and we cannot presume that she knew it from the mere fact of relationship. Nor are we willing to presume agency in Sam West merely because of the fact that he is her husband. The rule is thus stated in 2 C. J. S., Agency, § 23c, p. 1048: "Mere relationship or family ties, unaccompanied by any other facts or circumstances, will not justify an inference of agency—but such relationship is entitled to great weight, when considered with other circumstances, as tending to establish the fact of agency." See, also, *Wilson* v. *Shocklee,* 94 Ark. 301, 126 S. W. 832. Here there is no testimony that Sam West ever acted as agent for his wife and he certainly did not undertake to do so in this case.

The fact that he acted as intermediary for Sebastian county in securing from Mrs. Braley the right to take gravel from said land is without force as to Mrs. West, because it is not shown that she knew anything about it, except it may be presumed from relationship alone.

The decree as to Mrs. West will be reversed, and the cause dismissed.