SCHUSTER'S, INC. *v.* Johnnie P. WHITEHEAD

86-143                                722 S.W.2d 862

Supreme Court of Arkansas
Opinion delivered February 2, 1987

*Paul D. Capps* and *Sherry S. Means*, for appellant.

*William C. McArthur*, for appellee.

TOM GLAZE, Justice. This is a tort case in which a jury awarded appellee Johnnie P. Whitehead a judgment of $18,000.00 against appellant Schuster's, Inc. (Schuster's). In rendering its verdict, the jury determined that Steve Sack was an agent of Schuster's, and he negligently installed a ceiling fan in the home of Ocie Garrison, Whitehead's sister; it also found Whitehead's injuries were proximately caused by Sack's negligence. On appeal, Schuster's argues the trial judge should not have submitted the issue of agency to the jury. In this connection, appellant specifically argues the trial court erred in denying its motion for judgment notwithstanding the verdict or new trial. It further contends the jury's award was excessive. We affirm.

As appellant points out, the trial judge expressed some reservations when he denied appellant's request for directed verdict. The judge, as already noted, later denied appellant's motion for judgment n.o.v. or new trial, and ruled there was sufficient evidence for a jury to find an agency relationship existed between Schuster's and Steve Sack. Of course, the trial judge, in making a ruling on that motion, is guided by a different standard from the one we are obliged to follow on appeal. When a motion for a new trial is made to the trial court, the test applied is whether the verdict is against the preponderance of the evidence. ARCP 59(a). However, the test on review, where, as here, the motion was denied, is whether the verdict is supported by substantial evidence, giving the verdict the benefit of all reasonable inferences permissible under the proof. *Schaeffer* v. *McGhee*, 286 Ark. 113, 689 S.W.2d 537 (1985).

Before we consider if there is substantial evidence to support the jury's finding that Steve Sack was Schuster's agent, we first must look to the definition of agency.

In general, the relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for

the other to act for him subject to his control and that the other consents so to act. *Evans* v. *White*, 284 Ark. 376, 682 S.W.2d 733 (1985). Our court also has recognized the rule that an agency may be implied where one by his conduct holds out another as his agent, or thereby invests him with apparent or ostensible authority as agent, and he thereby becomes liable as the principal for the acts of the one held out or apparently authorized to act as agent, whether or not he actually intended to be bound. *Lemm* v. *Sparks*, 230 Ark. 105, 321 S.W.2d 388 (1959) (quoting from 2 C.J.S. *Agency* § 23 at 1048 which now appears in 2A C.J.S. *Agency* § 54 (1972) at 630). Finally, and certainly relevant to the situation now before us, we have held that mere relationship or family ties, unaccompanied by any other facts or circumstances, will not justify an inference of agency — but such relationship is entitled to great weight, when considered with other circumstances, as tending to establish the fact of agency. *Braley* v. *Arkhola Sand & Gravel Co.*, 203 Ark. 894, 159 S.W.2d 449 (1942).

Appellant contends that the only evidence of agency is the family relationship between it and the ones who sold and installed the ceiling fans. The record reflects evidence that countervails that contention. Ocie Garrison testified that she purchased two fans from Joan Sack, a saleswoman for Schuster's and daughter of its president, Roy Schuster. Garrison said she asked Mrs. Sack if she had someone who could install the fans and Mrs. Sack said her son, Steve Sack, would pick up, deliver and install them — which he did. Mrs. Garrison wrote Steve a check for $50.00 and that check subsequently was deposited in Schuster's account. Garrison concluded that she "felt like Steve was, being in [the] family, working there." About one year after Steve installed the fans, one fell, striking appellee Whitehead, when she was visiting in Garrison's home.

Appellant offered testimony that contradicted that given by Garrison, and if believed by the jury, could have supported appellant's theory of the case that Steve Sack was an independent contractor, not an agent. Nonetheless, when it is shown that the person causing the injury was at the time rendering a service for the defendant and being paid for that service, and the facts presented are as consistent with the master-servant relationship as with the independent contractor relation-

ship, then the burden is on the one asserting the independence of the contractor to show the true relationship of the parties. *Phillips Cooperative Gin Co.* v. *Toll*, 228 Ark. 891, 311 S.W.2d 171 (1958).

Appellant countered Garrison's testimony by denying, among other things, that it had recommended Steve Sack or that Schuster's received any benefit from the $50.00 check which had been deposited to its account. While Steve Sack denied ever having installed fans for Schuster's or received money for it, he conceded he had delivered fans for Schuster's in the past, and in the instant case, "he was ninety-five percent sure" that he had merely cashed the Garrison check at Schuster's. The evidence, albeit conflicting, certainly presented a factual issue consistent with the establishment of an agency relationship between appellant and Steve Sack as opposed to one of an independent contractor. The trial court instructed the jury regarding both parties' theories, and we believe it was correct in doing so.

■ Appellant next contends that the size of the verdict is not supported by substantial evidence and is so excessive as to shock the conscience of the court. We will not, of course, overturn a jury verdict unless it is clearly the result of passion or prejudice. *Duggar* v. *Arrow Coach Lines*, 288 Ark. 522, 707 S.W.2d 316 (1986). In support of its motion below, appellant complained the verdict was excessive, given the nature of Whitehead's injury and the lack of its permanency.

Suffice it to say, Whitehead presented her doctor's testimony that, as a result of the accident, she experienced ear problems and an inability to move her head, neck and arms. She testified that she was still having problems with her ears, shoulders and back, which have greatly reduced her activities. The trial court duly instructed the jury concerning the damage issue, telling it to consider the proof on the nature, extent and duration of Whitehead's injury, her medical expenses and any past pain and suffering and any she might experience in the future. In reviewing the evidence in the light most favorable to the verdict and where there is substantial evidence to support a verdict, we will not disturb it. *Duggar, supra*, at 524.

Because our review reflects the verdict is supported by substantial evidence, we must affirm.

Affirmed.

HOLT, C.J., not participating.