John Burton HOBBS v. STATE of Arkansas

CA CR 92-1264                     862 S.W.2d 285

Court of Appeals of Arkansas
Division I
Opinion delivered October 6, 1993

*Harold W. Madden*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. On July 26, 1991, John Burton Hobbs was charged with interference with custody, a Class D felony, in violation of Ark. Code Ann. § 5-26-502 (1987). That statute provides in pertinent part:

> (a) A person commits the offense of interference with custody if, knowing that he or she has no lawful right to do so, he or she takes, entices, or keeps any minor from any person entitled by a court decree or order to the right of custody of the minor.
>
> (b) Interference with custody is a Class D felony if the minor is taken, enticed, or kept without the State of Arkansas. Otherwise, it is a Class A misdemeanor.

The charges arose when appellant went to Texas to pick up his daughter for visitation. He contended that a standing order of the court, which was served on him in the pending Arkansas divorce case, gave him eight weeks visitation in the summer and that he told his ex-wife when he picked up his daughter that he intended to keep her for eight weeks pursuant to that order.

Mrs. Hobbs had been granted temporary custody of the child, and she did not agree that appellant was entitled to eight weeks summer visitation. Therefore, when her daughter was not returned after one week, she contacted the police, and they

eventually arrested appellant in Greenville, Mississippi, at the beginning of the seventh week of visitation. The child was returned to her mother, and the appellant was jailed in Arkansas.

On May 21, 1992, appellant filed a motion to dismiss. One of the reasons for the requested dismissal was:

> 3. Pleading further, in the divorce proceeding, Case No. E-90-883, Chancellor Andre E. McNeil found Defendant, John Hobbs, guilty of criminal contempt for interference with custody, and assessed fines and time incarcerated; that pursuit of the above-styled case constitutes double jeopardy.

On May 22, 1992, a hearing was held on the motion to dismiss and the judge took it under advisement. On May 28, 1992, the trial was held without a specific ruling from the trial judge on the motion to dismiss. Hobbs was tried by a jury, found guilty of misdemeanor interference with custody and sentenced to sixty-two days (time served) in the county jail and a fine of $500.00. On appeal appellant argues that he was placed in double jeopardy, and the trial court erred in denying his motion to dismiss.

Nancy Hobbs (now Guzman) testified that she and appellant had one child, Tabitha Nicole, and that she was awarded temporary custody on January 29, 1991, and given permission to move the child to San Antonio, Texas, where Mrs. Hobbs grew up, had family, and had been living since November 5, 1990. Appellant was given one week visitation every six weeks. Mrs. Hobbs said appellant picked up the child (then about twenty months old) on June 8 and was to have returned her on June 16. She said she had agreed to allow him to take Tabitha to Greenbrier, Arkansas, to spend the week with his parents, with whom he lived. Mrs. Hobbs said when Tabitha was not returned on June 16, she notified her attorney, had "fliers" printed up showing Tabitha as missing, then came to Arkansas to try to find her daughter and get her back.

On June 19, according to Mrs. Hobbs, she spoke to appellant's father in Greenbrier, but was never able to contact appellant himself. On June 20 an ex parte order was granted which gave law enforcement officials the right to retrieve and return Tabitha to Mrs. Hobbs. She said at that point she had done

all she could do and returned home to San Antonio. Mrs. Hobbs said she did not see her child again until July 25, when she got a phone call from the sheriff telling her Tabitha had been found in Greenville, Mississippi, and she flew there to pick her up.

Appellant John Hobbs testified that he and his estranged wife separated on October 4, 1990, and that he didn't see his child for two or three months because Mrs. Hobbs had moved to Texas with the child. At the temporary divorce hearing on January 29 Mrs. Hobbs was awarded temporary custody of Tabitha and appellant was given *reasonable* visitation. He said attached to the complaint for divorce was a small blue booklet entitled *Handbook for Domestic Relations Litigants*, 20th Chancery District of Arkansas, which stated that it was a court order and that he was to follow the suggested rules and regulations. He said from page six of that booklet, he understood reasonable visitation to be one week every six weeks, eight weeks in the summer, and alternate holidays. Appellant said that during the temporary hearing he was allowed four days visitation with his daughter.

According to appellant, when he talked to his former wife about summer visitation with Tabitha, he informed her that he intended to pick up the child, return to Greenbrier, and keep her for eight weeks. Appellant said Mrs. Hobbs argued with him that he was not entitled to eight weeks visitation until after the final divorce hearing but when he went to pick Tabitha up in San Antonio, Mrs. Hobbs let Tabitha go with him without any fuss. Appellant said during the time Tabitha was with him he had visited his parents and grandparents and a cousin in Greenville, Mississippi. He admitted he had also gone to Amarillo, Texas, to bid on a job, but said he did not get it, and he then went to Greenville. Appellant said he and his cousin bid on a couple of jobs and got them and that was the reason he stayed in Greenville. He said he was arrested on the seventh week of his eight week visitation period.

Appellant insisted that he did not "kidnap" Tabitha but was simply following the temporary order which said he had "reasonable visitation" and the definition of reasonable visitation contained in the *Handbook for Domestic Relations Litigants*. He said it "never even crossed my mind" to not return his child to her mother. Appellant also testified that he had waived extradition to

Arkansas, and was brought back and jailed for sixty-two days without ever appearing before a judge.

■ Both the Arkansas and United States Constitutions prohibit placing a person twice in jeopardy for the same offense. Ark. Const. art. 2 § 8; U.S. Const. amend. 5. *See also Baggett* v. *State*, 15 Ark. App. 113, 690 S.W.2d 362 (1985). The Arkansas Supreme Court has said that the test of double jeopardy is not whether a defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense, and where two statutes are intended to suppress different evils, conviction under one will not preclude prosecution of the other. *Decker* v. *State*, 251 Ark. 28, 471 S.W.2d 343 (1971).

In *Baggett* the defendant had failed to return the child to the mother at the appointed time. He was found guilty of contempt by the chancery court and sentenced to serve ninety days in jail and pay a fine of $1,000.00. Later, he was found guilty of criminal interference with custody. In that case, the appellant argued that he was placed in double jeopardy. Because the order of the chancery court stated that it would consider remitting part of the monetary fine and jail sentence upon proper application by the defendant, this court found the order to be coercive in nature and held that the contempt order was civil and, therefore, appellant was not placed in double jeopardy. 15 Ark. App. at 120.

In the instant case, Hobbs argues that he was fined and ordered incarcerated for time served and that this constituted criminal contempt. We agree.

In *Fitzhugh* v. *State*, 296 Ark. 137, 752 S.W.2d 275 (1988), our supreme court discussed the distinctions between civil and criminal contempt as follows:

> The purpose of a criminal contempt proceeding is that it is brought to preserve the power and vindicate the dignity of the court and to punish for disobedience of its order. A civil contempt proceeding is instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made for the benefit of those parties [citations omitted]. However, the substantive difference between civil and criminal contempt often becomes blurred. The character of the relief, rather than

the trial court's characterization of the substantive proceeding becomes the critical factor in determining the nature of the proceeding for due process purposes. The Supreme Court of the United States has clearly set out the distinction between the types of relief:

"If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911). The character of the relief imposed is thus ascertainable by applying a few straight-forward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." *Id.*, at 442. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.

. . .

The distinction between relief that is civil in nature and relief that is criminal in nature has been repeated and followed in many cases. An unconditional penalty is criminal in nature because it is "solely and exclusively punitive in character." *Penfield Co.* v. *SEC*, 330 U.S. 585, 593 (1947). A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act. "One who is fined, unless by a day certain he [does the act ordered], has it in his power to avoid any penalty. And those who are imprisoned until they obey the order, 'carry the keys of their prison in their own pockets.' " *Id.*, at 590, quoting *In re Nevitt*, 117 F. 448, 461 (CA8 1902).

*Hicks ex rel. Feiock* v. *Feiock*, 485 U.S. 624 (1988).

296 Ark. at 138-40, 752 S.W.2d at 276-77.

Appellant also argues that Ark. Code Ann. § 5-1-113(1)(B)(i) (1987) provides that it is an affirmative defense to a prosecution that there has been a former prosecution for a different offense if the former prosecution resulted in a conviction *unless*:

> The offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of the offenses is intended to prevent a substantially different harm or evil[.]

Appellant contends that the offense proven in this criminal trial contains exactly the same facts as the offense for which he was found in contempt of court, jailed and fined in chancery court. We agree. Although the hearing in which appellant was adjudged in contempt of court was in connection with a divorce and custody case in chancery court, it resulted in appellant's incarceration as punishment, and thus was in the nature of a criminal proceeding.

> Jeopardy denotes risk and is traditionally associated with a criminal prosecution. *See Serfass* v. *United States*, 420 U.S. 377 (1975). It has been held that the risk to which the double jeopardy clause refers is not present in proceedings that are not "essentially criminal." *Helvering* v. *Mitchell*, 303 U.S. 391 (1938). Stated another way, the risk to which the term jeopardy refers is that traditionally associated with "actions intended to authorize criminal punishment to vindicate public justice." *United States ex rel. Marcus* v. *Hess*, 317 U.S. 537 (1943).

*Fariss* v. *State*, 303 Ark. 541, 543-44, 798 S.W.2d 103, 104 (1990).

The State contends that the double jeopardy argument was not preserved for appeal because appellant failed to get a definitive ruling from the trial court on his motion to dismiss. In order to preserve an issue for review by the appellate court an appellant must have obtained a ruling at the trial court level. *Menard* v. *City of Carlisle*, 309 Ark. 522, 529, 834 S.W.2d 632, 636 (1992); *State* v. *Torres*, 309 Ark. 422, 426, 831 S.W.2d 903,

905 (1992); *Pharo* v. *State*, 30 Ark. App. 94, 101, 783 S.W.2d 64, 68 (1990). The record shows that appellant did get a ruling on his double jeopardy motion. At the close of all the evidence counsel for appellant stated:

> MR. MADDEN: Your honor, at this time the Defendant would renew all of its previous motions[.] . . .
>
> THE COURT: The court will stand by its previous rulings and the motion[s] will be denied.

■ The State also argues that appellant's former jeopardy argument is procedurally barred because he has failed to bring forth a record that demonstrates error. In order to obtain reversal of his criminal conviction an appellant must place before this court a record that shows error occurred. *Kittler* v. *State*, 304 Ark. 344, 347, 802 S.W.2d 925, 927 (1991); *Burkett* v. *State*, 32 Ark. App. 60, 796 S.W.2d 355 (1990); and *Lee* v. *State*, 27 Ark. App. 198, 210, 770 S.W.2d 148, 154 (1989). The record on appeal is limited to that which is abstracted. *Irvin* v. *State*, 28 Ark. App. 6, 13, 771 S.W.2d 26, 29 (1989).

■ We think appellant has brought us an adequate record. It contains the temporary order in Faulkner County Chancery Court Case No. E-90-883 granting custody to Mrs. Hobbs, and the parties agreed that the facts are not in dispute. In addition, the prosecutor admitted appellant had been found in contempt of court and sanctions were administered.

> PROSECUTOR: I believe the parties were divorced in Arkansas and she was given permission to take the child out of Arkansas to live in Texas but the father brought the child back without permission from the Chancery Court. The Court found him in contempt of court and assessed fines. *I will agree with the point that Judge McNeil assessed some penalties, but it was our understanding it was for civil contempt.*
>
> DEFENSE COUNSEL: Penalties make it criminal. Fines make it criminal.

In fact, appellant testified that he had been incarcerated for sixty-

two days and that testimony was not disputed. Because, as we have shown above, appellant's incarceration by the chancellor was "essentially criminal," we think jeopardy attached. Therefore, appellant could not be tried and punished a second time for the same offense.

Reversed and dismissed.

COOPER and ROBBINS, JJ., agree.