Patricia McMAHAN *v.* John BERRY

890 S.W.2d 242

Supreme Court of Arkansas
Opinion delivered December 19, 1994

*Howell, Trice & Hope, P.A.*, by: *Scott G. Lauck*, for appellant.

*Wells Law Office*, by: *Bill G. Wells*, for appellee.

STEELE HAYS, Justice. This dispute arises from an automobile collision. Appellant Patricia McMahan's son, Christopher Clifton, was involved in an automobile accident with appellee John Berry. The jury returned a verdict against Christopher Clifton for $5,000 in compensatory damages and $7,500 in punitive damages. The jury returned a verdict against appellant McMahan for $5,000 in compensatory damages. Ms. McMahan appeals from that judgment.

As John Berry was attempting to turn left from State Highway 4 near Warren, he was struck from the rear by Christopher Clifton's vehicle. The title to the Clifton vehicle was in Patricia McMahan's name. Berry filed suit against McMahan and Clifton for personal injuries and property damage. Berry alleged that Clifton was negligent in the operation of the vehicle, that McMahan negligently entrusted her vehicle to Clifton, and that McMahan, as owner of the vehicle, had control and responsibility for the vehicle so as to render her liable for negligent operation. The trial court granted McMahan's motion for directed verdict on the claim of negligent entrustment but held there was a question of fact as to whether an agency relationship existed between McMahan and Clifton.

On appeal, McMahan contends (1) the trial court erred in giving instructions relating to agency and (2) the trial court erred in

allowing verdict forms with the appellant's name on them to be submitted to the jury. We find the trial court erred in instructing the jury regarding agency and reverse.

Appellant McMahan objected to the proposed jury instructions because there was no proof of agency. Without responding directly to the objection, the trial court instructed the jury regarding agency. The instructions provided in part:

> An agent is a person who, by agreement with another called a principal, acts for the principal and is subject to his control. The agreement may be oral or written or implied from the conduct of the parties and may be with or without compensation.

> If one person has the right to control the action of another at a given time, the relationship of principal and agent may exist at that time, even though the right to control may not have actually been exercised.

> One of the vehicles involved in this case was driven by Christopher Clifton, the vehicle being owned by Patricia McMahan. You may consider these facts along with any other evidence in the case in deciding whether Christopher Clifton was acting as agent for Patricia McMahan, his parent, at the time of the occurrence.

This instruction was based upon AMI Civ. 3rd 701 and AMI Civ. 3rd 706. AMI 706, however, was modified. AMI 706, *Agency — Minor Driver's Parent A Passenger*, provides in part:

> [The vehicle] [One of the vehicles] involved in this case was driven by _____, the minor child of _____, *who was a passenger in the vehicle* [and owned the vehicle].

(Emphasis supplied.)

■■■ The question is whether Mr. Berry presented sufficient evidence of agency to submit the case to the jury. The burden of proving an agency relationship lies with the party asserting its existence. *Pledger* v. *Troll Book Clubs, Inc.*, 316 Ark. 195, 871 S.W.2d 389 (1994). The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal and (2) that the agent act on the principal's behalf and be subject to the principal's control. *Id.* In *Schuster's,*

*Inc.* v. *Whitehead*, 291 Ark. 180, 722 S.W.2d 862 (1987), we examined the question of agency in connection with a family relationship. We wrote:

> In general, the relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control and that the other consents so to act. *Evans* v. *White*, 284 Ark. 376, 682 S.W.2d 733 (1985). Our court also has recognized the rule that an agency may be implied where one by his conduct holds out another as his agent, or thereby invests him with apparent or ostensible authority as agent, and he thereby becomes liable as the principal for the acts of the one held out or apparently authorized to act as agent, whether or not he actually intended to be bound. *Lemm* v. *Sparks*, 230 Ark. 105, 321 S.W.2d 388 (1959) (quoting from 2 C.J.S. *Agency* § 23 at 1048 which now appears in 2A C.J.S. *Agency* § 54 (1972) at 630). Finally, and certainly relevant to the situation now before us, we have held that mere relationship or family ties, unaccompanied by any other facts or circumstances, will not justify an inference of agency — but such relationship is entitled to great weight, when considered with other circumstances, as tending to establish the fact of agency. *Braley* v. *Arkhola Sand & Gravel Co.*, 203 Ark. 894, 159 S.W.2d 449 (1942).

Indeed, it is well established that a parent is not liable for the negligence of a son or daughter when operation of the parent's automobile caused damage in circumstances where the relationship of principal and agent, or master and servant, did not exist. *Bonner* v. *Surman*, 215 Ark. 301, 220 S.W.2d 431 (1949); *Layes* v. *Harris*, 187 Ark. 1107, 63 S.W.2d 971 (1933).

In the instant case, Christopher Clifton was eighteen years of age at the time of the accident and Patricia McMahan, his mother, was the legal owner of the vehicle he was operating. However, there is no evidence of a principal and agent relationship. The only testimony regarding the extent of Ms. McMahan's control over either Clifton or the vehicle occurred during direct examination of Clifton by counsel for the appellee:

> Q. Okay. And the vehicle was in your mother's name, is that right.

A. Yes, sir.

Q. And you obtained the vehicle to go to the river, is that correct?

A. No, sir. I didn't obtain the vehicle for that specific — to go to the river, no, sir.

Q. Okay.

A. The vehicle was mine. I had bought and paid for the vehicle. It was just in my mother's name.

Q. If it was in her name then she had control of the vehicle?

A. Yes, sir.

Q. And she allowed you to use that vehicle that day, is that right?

A. Yes, sir.

Clifton testified he was not living with his mother at the time of the accident. He stated he was living with his uncle in Banks, Arkansas, because his mother was working for a nursing agency in Little Rock. Finally, there was no testimony that Clifton was acting in any way to benefit his mother. He was on his way to his uncle's home after attending a senior class party.

This case is comparable to *Bonner* v. *Surman, supra*, where Bobby Bonner, eighteen years of age, caused a collision with a parked truck while driving his mother's car. Judgment for $2,000 was entered against Rachael Bonner on the theory that "Bobby Bonner was in and about the business of Rachel Bonner" when the collision occurred. Bobby Bonner usually covered his newspaper route on a bicycle; however, he borrowed his mother's car on the day of the accident. It was undisputed that Mrs. Bonner did not have a contract to deliver the newspapers and that her son's work, although permissive, was on his own account. The testimony indicated Bobby had at times used his earnings to purchase personal clothing, but he did not contribute to the household upkeep such as buying groceries. The Court noted the collateral benefit received by Mrs. Bonner was what she may have saved in the purchase of clothing for Bobby, due to his volun-

tary act in applying some of his money in that way. In reversing the judgment against Mrs. Bonner, the Court found that she did not exercise any element of control over the money and any benefit was, at most, uncertain.

Further, it is significant that AMI 706 (Agency — Minor Driver's Parent A Passenger) is specifically designed for instances in which the parent is a passenger in the vehicle. When the parent is a passenger in the vehicle, there are circumstances other than mere relationship or family ties that may justify an inference of agency. In such a situation there is a presumption that the parent exercises some control over the child. *See Callaway* v. *Cherry*, 229 Ark. 297, 314 S.W.2d 506 (1958). However, the presumption is not applicable here because Ms. McMahan was not a passenger in the vehicle.

While agency is normally a question of fact, it becomes a question of law when the facts are undisputed, and only one inference can reasonably be drawn. *Dodds* v. *Hanover Ins. Co.*, 317 Ark. 563, 880 S.W.2d 311 (1994). We cannot say Mr. Berry presented sufficient evidence for a jury instruction on agency. The mere fact that Ms. McMahan owned the vehicle her son was driving does not suffice. *See Bonner* v. *Surman, supra; Schuster's, Inc.* v. *Whitehead, supra.*

The appellee submits that appellant failed to obtain a ruling from the trial court to her objections to the instructions on agency, citing *Hobbs* v. *State*, 43 Ark. App. 149, 862 S.W.2d 285 (1993). The record reflects that in chambers the trial judge indicated his intention to give the disputed instruction and the verdict forms. Counsel objected to the instructions, as we have said, for lack of evidence of agency and to the verdict forms on the basis of confusing the jury. Counsel proffered verdict forms which asked the jury whether it found from a preponderance of the evidence that Christopher Clifton was acting as agent for his mother, Patricia McMahan, at the time of the collision. The trial judge acknowledged the objection and the proffered verdict forms and proceeded to instruct the jury. Ordinarily a ruling by the trial court is essential, as we have often said issues left unresolved below cannot be considered on appeal. *Hicks* v. *Clark*, 316 Ark. 148, 870 S.W.2d 750 (1994).

However, counsel objected to the agency instruction, stating correctly why it should not be given. The trial court then proceeded to give the errant instruction. The giving of the instruction effectively became the ruling and we can see no sound reason why more should be required.

For the reasons stated, the judgment appealed from is reversed as to the appellant and the complaint as to her is dismissed.