2012 Ark. App. 61

**James Wyman WALKER, Appellant**

v.

**STATE of Arkansas.**

**No. CA CR 11–647.**

Court of Appeals of Arkansas.

Jan. 18, 2012.

Robert Lamar Depper Jr., El Dorado, for appellant.

Dustin McDaniel, Atty. Gen., Rebecca B. Kane, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

Appellant James Wyman Walker was convicted in a jury trial of two counts of aggravated robbery, two counts of first-degree terroristic threatening, and one count of second-degree battery. Mr. Walker was sentenced as a habitual offender to prison terms of 25, 25, 15, 15, and 15 years to be served consecutively, for a total of 95 years in prison. Mr. Walker now appeals from his convictions and sentence, arguing that cumulative sentencing for these convictions violated the Arkansas and federal constitutional prohibitions against double jeopardy. He also argues that the State's failure to include a contra pacem clause after each count rendered the charging instrument constitutionally infirm and incapable of oral amendment. We find no error and affirm.

Prior to jury selection there was a pretrial hearing. At that hearing, Mr. Walker made a motion to quash the information filed by the State because it failed to include the contra pacem clause, "Against the peace and dignity of the State of Arkansas," as required by Article 7, section 49 of the Arkansas Constitution. In the State's response, it moved to orally amend the information in two respects. First, the

State asked to amend the information to reduce the charge of first-degree battery to second-degree battery. Next, the State asked for leave to amend the information to include the words "Against the peace and dignity of the State of Arkansas" at the end of each count. The trial court denied appellant's motion to quash and granted the State's motion to amend the information in both of those respects.

Quory Rowden, one of the victims, testified at the jury trial. Quory was formerly married to the other victim, Trudy McDaniel, and they lived in a house with Trudy's nine-year-old daughter. Quory testified that they were getting ready for church on the morning of March 29, 2009, when two men came to their door. One of the men was Mr. Walker and the other was a man named Tobias. The men said that Trudy's cousin had sent them there to buy some shoes. Quory let them in and showed them the shoes, and the men left and said they would return with some money.

When the two men returned to the house Quory let them in the living room and went to the back of the house to get the shoes. At this time Trudy was in her room, and Trudy's daughter was in her room. When Quory came back to the living room with the shoes both men pulled guns on him. They asked him for money and Quory said he had $240 in his pocket. Then Mr. Walker hit him in the mouth with his gun, causing Quory's mouth to bleed and become swollen. Quory figured that they knew he had more money, so he took them to his safe. Mr. Walker took the $240 out of Quory's pocket and Tobias took the safe, which contained $1000.

During this episode Quory was telling the two men that he wanted to live and Tobias said, "Don't shoot, don't kill him." Then Mr. Walker held a gun to Quory's head and said it was "murking season,"

which Quory said meant "killing season." Mr. Walker told Quory, "I been wanting you for a minute." Tobias again told Mr. Walker not to kill him and said, "let's just go on and get out of here and go." Mr. Walker cocked the hammer on his gun and told Quory to turn around and start counting. Quory cooperated, and then Mr. Walker threatened to kill him. According to Quory, Mr. Walker told him, "If you call the police, I'm going to come back and kill you."

Trudy McDaniel also testified about the events that occurred that morning. She recalled the two men coming to the back of the house with guns to Quory's head and her pleading with them not to kill him. According to Trudy, Mr. Walker said, "shut that bitch up." Trudy started praying and had never before been that afraid. Mr. Walker asked his accomplice, "You think we ought to kill this bitch-ass nigger?" and Tobias said "no." Trudy testified that during this time her daughter was hiding under a bed but that she could see what was happening. Trudy stated that in addition to Quory's money and the safe, the men took the shoes and about $80 from her purse. The men also took a cell phone and a home wireless phone. After Tobias took the safe Mr. Walker asked him whether "we ought to kill them" and Tobias again replied "no" and said, "we got everything, let's go." Trudy said that Mr. Walker made threats to both her and her husband about calling the police. According to Trudy, Mr. Walker said that if they called the police he would come back and kill them both.

The jury convicted Mr. Walker of all five felony counts, and during the sentencing phase the jury returned sentences of 25, 25, 15, 15, and 15 years. The jury recommended that these sentences run consecutively. At that time Mr. Walker made an oral motion for the trial court to reserve

judgment on whether the sentences would run concurrently or consecutively, and requested time to brief the issue. The trial court granted appellant's motion. Thereafter, Mr. Walker filed a brief asking for his sentences to be concurrent, arguing among other things that running the sentences consecutively would violate double jeopardy. The State filed a brief asking for consecutive sentences, and after considering the briefs the trial court entered an order for consecutive sentences. The trial court's order recites:

> The evidence at the trial of this matter conclusively established that defendant entered the private residence of the victims, produced a weapon, took money and other property, threatened to kill the victims, and struck one of the victims in the face with a firearm. All of this was done in the presence of the minor child of the victims. These facts, and defendant's significant criminal history, persuade the court that the defendant's sentences should be served consecutively.

Mr. Walker's first argument in this appeal is that the cumulative sentencing for aggravated robbery, second-degree battery, and first-degree terroristic threatening violates the Arkansas and federal constitutional prohibitions against double jeopardy. Article 2, section 8 of the Arkansas Constitution provides that "no person, for the same offense, shall be twice put in jeopardy of life or liberty." The Fifth Amendment to the United States Constitution prohibits any person from being "subject for the same offense to be twice put in jeopardy of life or limb."

The prohibition against double jeopardy applies not only to multiple trials for the same offense, but also protects against multiple punishments for the same offense. *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Arkansas Code Annotated section 5–1–110 (Repl.2006) provides, in relevant part:

(a) When the same conduct of a defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. However, the defendant may not be convicted of more than one (1) offense if:

(1) One (1) offense is included in the other offense, as defined in subsection (b) of this section;

(2) One (1) offense consists only of a conspiracy, solicitation, or attempt to commit the other offense;

(3) Inconsistent findings of fact are required to establish the commission of the offenses;

(4) The offenses differ only in that one (1) offense is defined to prohibit a designated kind of conduct generally and the other offense to prohibit a specific instance of that conduct; or

(5) The conduct constitutes an offense defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that a specific period of the course of conduct constitutes a separate offense.

(b) A defendant may be convicted of one (1) offense included in another offense with which he or she is charged. An offense is included in an offense charged if the offense:

(1) Is established by proof of the same or less than all of the elements

required to establish the commission of the offense charged;

(2) Consists of an attempt to commit the offense charged or to commit an offense otherwise included within the offense charged; or

(3) Differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish the offense's commission.

In the present case the jury was given the following instructions as to each of the charges. As to aggravated robbery, the jury was instructed that in order to convict the appellant it had to find that "with the purpose of committing a felony or misdemeanor theft, [he] employed or threatened to immediately employ physical force upon [the victims]" and that he was armed with a deadly weapon. *See* Ark.Code Ann. § 5–12–103(a)(1) (Repl.2006). With respect to first-degree terroristic threatening, the jury was instructed that in order to convict appellant it had to find that "with the purpose of terrorizing [the victims], [he] threatened to cause death to [the victims]." *See* Ark.Code Ann. § 5–13–301(a)(1)(A) (Repl.2006). As to second-degree battery, the jury was instructed that in order to convict appellant it had to find that "with the purpose of causing physical injury to Quory Rowden, [he] caused physical injury to Quory Rowden by means of a deadly weapon other than a firearm." *See* Ark. Code Ann. § 5–13–202(a)(2) (Repl.2006).[1]

Mr. Walker argues that both first-degree terroristic threatening and second-degree battery are lesser-included offenses of aggravated robbery, and therefore that the consecutive sentencing constituted multiple punishments for the same offense and violated his right against double jeopardy. He contends that the acts used to prove aggravated robbery in this case were also used to prove the other charged crimes. Appellant asserts that the threat of death was communicated when he pointed the gun at the victims before a death threat was verbalized, and that the terroristic threat communicated by him constituted a continuing course of conduct that merged with the aggravated robbery of the victims. As for second-degree battery, Mr. Walker contends that, as charged and instructed to the jury, this offense did not contain any elements of proof not required by the aggravated-robbery charge and instruction. Mr. Walker further argues that second-degree battery is a lesser-included offense of aggravated robbery pursuant to Ark.Code Ann. § 5–1–110(b)(3) (Repl. 2006), which provides an offense is included in an offense if it "[d]iffers from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish the offense's commission."

The decision by a trial court that a defendant's protection against double jeopardy was not violated is reviewed by the appellate court de novo, with no deference to the trial court's determination. *Everetts v. State*, 2011 Ark. App. 629, 2011 WL 5083259. On our de novo review, we conclude that the trial court did not err in determining that consecutive sentencing for these offenses did not violate the prohibition against double jeopardy.

---

1. Although the battery was committed with a firearm, it did not constitute first-degree battery because the firearm was being used as a club and not a firearm. *See Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). For that reason, the State orally amended the information to reduce that charge to second-degree battery.

■ Applying the same-elements test, or *Blockburger* test, neither first-degree terroristic threatening nor second-degree battery is a lesser-included offense of aggravated robbery. As charged and instructed to the jury, the offense of first-degree terroristic threatening required the elements of threatening to cause the death of the victim and the purpose of terrorizing ₈the victim, elements that are not necessary to prove aggravated robbery. A conviction for second-degree battery requires proof of purposely causing physical injury to the victim, and this proof is not necessary to sustain a conviction for aggravated robbery because that offense may be completed without injuring the victim; the State need only show that with the purpose of committing a theft the defendant employed or threatened to employ force while armed with a deadly weapon. Striking the victim with the weapon constituted an additional crime (battery) that is not included within the elements of aggravated robbery. *See generally Birchett v. State*, 294 Ark. 176, 741 S.W.2d 267 (1987). Because both first-degree terroristic threatening and second-degree battery require proof of additional facts not required by aggravated robbery, these offenses were not lesser-included offenses under the Supreme Court's *Blockburger* analysis.

■ Nor do we agree that any of the provisions of Ark.Code Ann. § 5–1–110(a) and (b) (Repl.2006) prohibited prosecution and multiple punishments for each of the charged offenses. Contrary to Mr. Walker's argument, the proof of his terroristic threatening was not a continuing course of conduct that merged with the aggravated robbery.[2] The aggravated robbery was completed when Mr. Walker was armed with a deadly weapon threatening to employ physical force with the purpose to commit a theft, and the separate offense of terroristic threatening was not committed until he expressly threatened to kill both victims. As for Mr. Walker's argument that second-degree battery differs from aggravated robbery ₉only in the respect that a less serious injury is contemplated, he erroneously relies on subsection (a)(3) of the aggravated-robbery statute, requiring proof that the person "inflicts or attempts to inflict death or serious physical injury on another person." In this case, Mr. Walker was charged and the jury instructed pursuant to subsection (a)(1) of the aggravated-robbery statute, requiring proof that the person was armed with a deadly weapon. Clearly, a person may be armed with a deadly weapon without causing physical injury, so second-degree battery contemplates an element not required for an aggravated-robbery conviction.[3] We hold that there were no double-jeopardy violations in this case and that the trial court committed no error in ordering each of Mr. Walker's sentences to run consecutively.

■ Mr. Walker's remaining argument is that the State's failure to include a contra pacem clause after each count rendered the information constitutionally infirm and incapable of oral amendment. Article 7, section 49 of the Arkansas Con-

**2.** In *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988), our supreme court specifically held that terroristic threatening is not a continuing offense under § 5–1–110(a)(5).

**3.** Appellant correctly asserts that aggravated robbery requires threatening or employing "physical force," defined as bodily impact, restraint, confinement, or the threat thereof. *See* Ark.Code Ann. § 5–12–101 (Repl.2006). However, this element is not the equivalent of purposely causing a "physical injury," defined as impairment of physical condition, infliction of substantial pain, or infliction of bruising, swelling, or a visible mark associated with physical trauma. *See* Ark.Code Ann. § 5–1–102(14) (Repl.2006).

stitution provides that all indictments shall conclude: "Against the peace and dignity of the State of Arkansas." This is known as the contra pacem clause, *see McNeese v. State*, 334 Ark. 445, 976 S.W.2d 373 (1998), and it has been long held that the charging instrument must contain this phrase. *See State v. Hazle*, 20 Ark. 156 (1859). Each count in an indictment must stand alone, and therefore each must contain the contra pacem clause. *Caldwell v. State*, 295 Ark. 149, 747 S.W.2d 99 (1988). In the case at bar the information did not contain the contra pacem language anywhere in the document, Mr. Walker objected prior to trial, but the trial court denied Mr. Walker's motion to quash and permitted the State to orally amend the information to include this clause at the end of each of the charges. Mr. Walker argues that the oral amendment was an impermissible attempt to cure this constitutional deficiency and thus his convictions should be reversed.

The procedure and limitations on amending indictments are governed by Arkansas Code Annotated section 16–85–407 (Repl.2005), which provides:

(a) The prosecuting attorney or other attorney representing the state, with leave of the court, may amend an indictment as to matters of form or may file a bill of particulars.

(b) However, no indictment shall be amended nor bill of particulars filed so as to change the nature of the crime charged or the degree of the crime charged.

(c) All amendments and bills of particulars shall be noted of record.

We hold under the circumstances of this case that the trial court committed no error in allowing the State to orally amend the information to include the contra pacem clauses.

Our supreme court spoke to the purpose of the statute and propriety of amendments in *Hoover v. State*, 353 Ark. 424, 428, 108 S.W.3d 618, 620 (2003):

[W]ith respect to allegations of improper amendments under the terms of section 16–85–407, this court has stated that section 16–85–407 relates to matters of notice and prejudice. Section 16–85–407 provides a criminal defendant with protection against being prejudiced through surprise. Where an amendment misleads or impedes a criminal defendant in making a defense, a motion to quash under Section 16–85–407 may be proper.

(Citations omitted.) In *Hoover, supra*, the supreme court held that an amendment to the information was not improper where the defendant was not surprised or prejudiced, there was no evidence that the amended information impaired him in any way in putting on his defense, and he did not ask for a continuance.

In *Johnson v. State*, 55 Ark.App. 117, 932 S.W.2d 347 (1996), we held that an information may be amended during trial if the nature or degree of the crime is not changed and if the defendant is not prejudiced through surprise. There is no requirement that an amendment be made in writing. *Id.* In *Caldwell v. State*, 295 Ark. 149, 747 S.W.2d 99 (1988), the supreme court indicated that an information may be amended to include the contra pacem clause.

Turning to the case at bar, the amendment adding the contra pacem clauses did not change the nature or degree of the crimes charged, nor did it compromise Mr. Walker's ability to make a defense. The amendment resulted in no prejudice, and Mr. Walker did not claim surprise or request a continuance after the amendment was granted. For these reasons, the amendment conformed to the requirements of Arkansas Code Annotated section

16–85–407 and our caselaw, and there was no error.

Affirmed.

PITTMAN and GLOVER, JJ., agree.