
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-15-61

GREGORY WHITT

APPELLANT

V.

STATE OF ARKANSAS

APPELLEE

Opinion Delivered September 30, 2015

APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT
[No. CR-2004-575-1]

HONORABLE WILLIAM A. STOREY, JUDGE

AFFIRMED

## LARRY D. VAUGHT, Judge

After a jury trial on October 1, 2014, appellant Gregory Whitt was convicted of jury tampering and sentenced to a term of six years in the Arkansas Department of Correction and fined $5,000. On appeal, Whitt argues that (1) his conviction for jury tampering violated constitutional protections against double jeopardy, and (2) there was insufficient evidence to support the conviction. We affirm.

Whitt was charged with endangering the welfare of a minor and resisting arrest arising from an altercation with police, who responded to a June 2013 domestic-disturbance call made by his girlfriend. A jury trial took place on March 20, 2014. While on recess, William Winkleman, a juror in the case, encountered Whitt in the bathroom. Winkleman made a comment to Whitt about how he would rather be fishing, and Whitt then told him that his girlfriend had "taken medication" and had "done some wild things." Winkleman tried to change the subject and left the bathroom. When he left, Ashley Richardson, another juror on

the case, overheard Whitt say something to the effect that he did not tell authorities that his girlfriend was taking medication on the night of the incident because she was in medical school.

After deliberations began but prior to reaching a verdict, Winkleman and Richardson notified the circuit judge of Winkleman's conversation with Whitt and what Richardson had overheard. The circuit judge declared a mistrial and excused the jury. The circuit judge stated, "Clearly, there is reasonable cause to believe that [Whitt's] in contempt of this court. I'm therefore going to find him, at least for the time being, in contempt of this court, order him transported to the Sheriff of Washington County, incarcerated, and if the Defendant wishes to be heard, although I have a number of matters set for tomorrow, we'll try to hear it tomorrow. So the defendant, Gregory Keith Whitt, will be placed in custody."[1]

The following day, on March 21, 2014, Whitt was charged with jury tampering (Class D felony) in violation of Arkansas Code Annotated section 5-53-115 (Repl. 2005). A jury trial took place on October 1, 2014. The State called three witnesses—Corporal Shawn Wilson (the officer who responded to the June 2013 domestic disturbance), Winkleman, and Richardson. At the conclusion of the jury trial, Whitt was convicted of jury tampering, and he was sentenced as a habitual offender to six years in the Arkansas Department of Correction and fined $5,000.

Whitt argues on appeal, as he did in his motion to dismiss below, that his conviction for jury tampering violated constitutional protections against double jeopardy. The basis for

---

[1] The record does not indicate anything further with respect to contempt. In fact, the transcript of the March 20, 2014 proceeding is not a part of the record on appeal, except that the one page containing the circuit court's contempt finding is attached as an exhibit to the motion to dismiss the jury-tampering case and is contained in the addendum.

his argument is that he had been held in contempt for the same conduct that led to the jury-tampering charge.

We review a circuit court's denial of a motion to dismiss on double-jeopardy grounds de novo on appeal. *Winkle v. State*, 366 Ark. 318, 235 S.W.3d 482 (2006). When the analysis presents itself as a mixed question of law and fact, the factual determinations made by the trial court are given due deference and are not reversed unless clearly erroneous. *Id.* at 320, 235 S.W.3d at 483. The Fifth Amendment to the United States Constitution and Article 2, Section 8, of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same offense. The Double Jeopardy Clause protects criminal defendants from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Hughes v. State*, 347 Ark. 696, 702, 66 S.W.3d 645, 648 (2002). In order to determine whether the same act violates two separate statutory provisions, we apply the same-elements test as set out in *Blockburger v. United States*, 284 U.S. 299 (1932). Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses, or only one, is whether each provision requires proof of a fact that the other does not. *Walker v. State*, 2012 Ark. App. 61, 389 S.W.3d 10. While criminal contempt does not have elements as does a statutory criminal offense, this court has stated that it still applies the same-elements test. *Penn v. State*, 73 Ark. App. 424, 44 S.W.3d 746 (2001).

Whitt argues that he was held in criminal contempt for speaking to a juror during his trial on March 20, 2014, and incarcerated immediately, which was punitive. He further argues

that his contempt offense is a lesser-included offense of jury tampering. Whitt relies on *Penn v. State* in support of his argument.

In *Penn v. State*, Penn, who was an attorney, was charged with interference with court-ordered custody. She filed a motion to dismiss on double-jeopardy grounds because she had previously been held in contempt of court relating to the same conduct, and was sentenced to five days in jail and ordered to pay an $8500 attorney fee as a sanction. The motion was denied, and she filed an interlocutory appeal to this court. We reversed the circuit court's denial of the motion to dismiss on double-jeopardy grounds, finding that the judgment of contempt was a lesser-included offense of the crime with which Penn was charged. *Id.* at 428, 44 S.W.3d at 749.

Whitt's case is distinguishable from *Penn*. While Whitt's being held in contempt for speaking with a juror may be a lesser-included offense of jury tampering, we need not make that determination because there is no indication in the present case that Whitt was punished for contempt. The record before us shows only what the circuit court said from the bench, which indicated that Whitt had been found in contempt "for the time being" and ordered to be taken into custody. At the beginning of the trial, the circuit court, in denying the renewed motion to dismiss on double-jeopardy grounds, stated that Whitt was never punished. There is no indication that a hearing was held, that an order of contempt was entered, or that Whitt was punished. Because there was no evidence that Whitt was punished for contempt as was the case in *Penn*, Whitt's reliance on *Penn* is misplaced. An appellant is required to bring up a record that demonstrates error. *See Hobbs v. State*, 43 Ark. App. 149, 862 S.W.2d 285 (1993).

Based on these facts, we hold that Whitt's conviction for jury tampering was not barred by double jeopardy.

In the alternative, Whitt argues that there was insufficient evidence to support the conviction of jury tampering. Our standard of review is well settled:

> A motion for directed verdict is a challenge to the sufficiency of the evidence. When a defendant makes a challenge to the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the State. Evidence, whether direct or circumstantial, is sufficient to support a conviction if it is forceful enough to compel reasonable minds to reach a conclusion one way or the other. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. On appeal, this court does not weigh the evidence presented at trial, as that is a matter for the fact-finder, nor do we assess the credibility of the witnesses.

*Ford v. State*, 2014 Ark. App. 576, at 1.

Arkansas Code Annotated section 5-53-115 provides: "A person commits the offense of jury tampering if he or she attempts directly or indirectly to communicate with a juror, other than as a part of the official proceedings in which the juror is participating, with the purpose of influencing the juror's vote, decision, or other action as a juror." Whitt conceded that he communicated with Winkleman in the bathroom during a recess at his trial on March 20, 2014. This concession satisfies the first element of the offense, which requires proof that he communicated directly or indirectly with a juror.

Whitt argues only that the evidence was insufficient to prove that he spoke to Winkleman with the intent to influence his decision. In support of his argument, Whitt contends that there was no evidence to indicate he knew Winkleman was a juror and that Winkleman initiated the conversation. He argues that Winkleman was not wearing a badge or identification to indicate he was a juror. He further suggests that Winkleman did not

recognize him when he first walked into the bathroom. While Winkleman testified that he did not recognize Whitt when he walked into the bathroom, he stated that he did recognize Whitt as the defendant when Whitt began speaking.

Whitt also argues there was no evidence of intent to influence the juror because what he said to Winkleman was unrelated to the resisting-arrest and child-endangerment charges. Winkleman testified that Whitt spoke of what his "wife"[2] was doing at the time of the alleged crime and that she had taken medication and done some wild things because of the medication. He testified that he knew Whitt's comments had to do with the case in which he was a juror. Winkleman stated that it sounded like Whitt was trying to get him on his side.

Whitt argues that his statements to Winkleman about his girlfriend had nothing to do with the case; however, the altercation with the girlfriend led to the police coming to the home to investigate a domestic disturbance, which resulted in the charges of resisting arrest and child endangerment. Whitt further contends that the jury had to speculate regarding Whitt's intent in making the statements, alleging that the State did not present evidence of intent. Whitt's talking to Winkleman about Whitt's girlfriend's actions on the night leading to the charges for which he was being tried was evidence of his intent to influence the juror's vote. In addition, Winkleman testified that he tried to change the conversation because he knew it was inappropriate. Based on this evidence, there was sufficient evidence from which the jury could conclude, without speculation or conjecture, that Whitt spoke with a juror with the intent to influence his decision in the case.

---

[2] The woman was actually his girlfriend.



Affirmed.

VIRDEN and GLOVER, JJ., agree.

*Flinn Law Firm, P.A.*, by: *Jennifer Williams Flinn*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.