Kenneth HOLLOWAY *v.* STATE of Arkansas

CR 92-1180                                    849 S.W.2d 473

Supreme Court of Arkansas
Opinion delivered March 15, 1993

*William R. Simpson, Jr.*, Public Defender, by: *Llewellyn J. Marczuk*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Kenneth Holloway, and his wife, Peggy Holloway, ran a day-care center in North Little Rock called Peggy's Day Care. The appellant was charged with and convicted of four counts of rape, four counts of sexual abuse, and one count of terroristic threatening committed against nine children enrolled at the day-care center. He was sentenced to life imprisonment for each of the rape counts plus 120 years for the sexual abuse, to be served consecutively. No time to serve was given on the conviction for terroristic

threatening.

The appellant now raises multiple issues on appeal: (1) whether the evidence was sufficient to support a conviction of sexual abuse in the first degree relating to victims K.H. and J.R.; (2) whether the trial court erred in permitting the state to reopen its case for six victims to identify Holloway after he made a motion for a directed verdict at the close of the state's case; (3) whether the trial court erred in permitting the state to amend Counts VII and VIII of the felony information from attempted rape to rape; (4) whether the trial court erred in finding L.S., age four, and Je.Ca., age six, competent to testify. The issues raised are without merit, and we affirm.

An investigation of Peggy's Day Care began in 1991 after several children who had been enrolled there reported that the appellant had sexually abused them. Following an investigation, an information was filed charging the appellant with two counts of rape, six counts of sexual abuse, and one count of terroristic threatening committed against several children who had been enrolled at the day-care during the time frame from 1989 to 1991.

On March 12, 1992, an omnibus hearing was conducted to determine the competency of the victims. The following witnesses were found competent to testify: L.S., age four; J.C., age five; Je.Ca., age six; K.H., age eight; R.W., age nine; Ja.Ca., age nine; S.G., age ten; H.C., age twelve; K.K., age twelve; and J.R., age twelve. At the competency hearing, the prosecutor announced that, based on the testimony of two victims, the state planned to *nolle pros* Counts VII and VIII charging the appellant with attempted rape and refile both counts as rape. The state instead amended the two counts on March 20, 1992, and added a count alleging that Holloway was a habitual offender.

The case went to trial on April 10, 1992, and a motion for a mistrial was granted due to potential prejudice on the part of a juror. On June 17, 1992, the trial began a second time but was halted due to the trial court's recusal. The trial commenced a third time on June 30, 1992, and was prosecuted over three days to conclusion.

Multiple victims testified about various sexual improprieties by the appellant, whom they called "Mr. Kenny." The state then

rested. Holloway moved for a directed verdict on the basis that several victims had not specifically identified him in the court-room as the culprit. The trial court allowed the state to reopen its case and recall six victims who made courtroom identifications. At the conclusion of the case, the jury returned a verdict of four life sentences on four counts of rape and 120 years on four counts of sexual abuse in the first degree, to run consecutively.

## *I. SUFFICIENT EVIDENCE REGARDING K.H. AND J.R.*

We begin by considering the sufficiency of the evidence relative to the two counts involving K.H., age eight, and J.R., age twelve.

K.H. testified that she was eight years old and that Holloway had touched her "private spot" in front, which she called her "PG," and her "private spot" in back, which she called her "bottom." She added that Holloway told her not to tell, but she did complain to Peggy Holloway. The appellant urges that this testimony fails the test of sexual contact.

With respect to J.R., age twelve, Holloway contends that she was indefinite about his touching her breasts. He points out that J.R. testified at the competency hearing that he came close but did not actually touch her breasts.

The testimony reveals that J.R., who was twelve years old at trial and presumably ten years old two years earlier when the incident occurred, described the circumstances of the touching at trial:

Q. Did he ever do anything to you?

A. Yes.

Q. Will you tell the jury about that?

A. I asked him. My back was itching one day, and I asked him to scratch it, and he did. And after a few minutes, I told him to stop and he didn't. And then he started coming around, and he started rubbing at first under my shirt. And then he started coming around to my side, and then he started coming around to my breast area.

Q. And what did he do?

A. He started trying to feel or touch.

Q. Did you have a shirt on?

A. Yes.

Q. Okay. Where was this in relation to your shirt?

A. Up here (Indicating).

Q. Was it on the inside or the outside of your shirt?

A. Inside.

Q. Okay. What did you do?

A. I started to moving, and then I started to move. Then Peggy drove up, and he quit, because he said Peggy was here, and he quit.

. . . .

Q. Okay. Can you tell us more about that? What he did when his hand started coming around?

A. He was rubbing, and he was trying to feel.

Q. Okay. Can you tell the jury what he was trying to feel?

A. He was trying to feel my breast.

Q. Okay. And did he do that?

A. He didn't get all the way around, but Peggy drove up before he could.

Q. Okay. Did he touch your breast?

A. He did kind of.

Q. I need you to — When you say kind of, what do you mean?

A. He didn't get all the way around on it, but he got to the side.

She then admitted that she was not wearing a bra at the time. On cross-examination, she repeated that he did touch her breasts, but said again that he did not get to the front but got to the side. She admitted that her breasts were not developed like "a full

grown lady." She said that she had testified that Holloway had not touched her breasts at the competency hearing because she was scared.

The elements of sexual abuse in the first degree are fixed by statute:

> (a) A person commits sexual abuse in the first degree if:
>
> . . . .
>
> (3) Being eighteen (18) years old or older, he engages in sexual contact with a person not his spouse who is less than fourteen (14) years old.

Ark. Code Ann. § 5-14-108(a)(3) (1987). "Sexual contact" is defined as "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, or buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(8) (1987).

The standard of review on appeal is whether there is any substantial evidence to support the verdict that the appellant touched these two girls for purposes of sexual gratification, viewing the evidence in the light more favorable to the state as appellee. *See Green* v. *State*, 310 Ark. 16, 832 S.W.2d 494 (1992).

In the case of K.H., even though she used her own terms — "private spots" and then "bottom" and "PG" — that is sufficient for a jury to believe that a sexual offense occurred, if she describes where those parts are. *Stewart* v. *State*, 297 Ark. 429, 762 S.W.2d 794 (1989). She did that in this case when she said her "PG" was in the front and her bottom was in the back. J.R. testified that the appellant touched her on the side of her breasts, and the jury was free to believe or disbelieve this testimony. They chose to believe it. In both cases, the touching of the body parts constituted sexual contact under the statute, and this court may assume that the appellant's purpose in touching the girls was for sexual gratification without specific proof that he was so motivated. *See McGalliard* v. *State*, 306 Ark. 181, 813 S.W.2d 768 (1991). We hold that sufficient evidence supporting the convictions existed on both counts.

## II. REOPENING OF CASE

Holloway argues next that the trial court erred in letting the state reopen its case to allow six victims to identify him after he had made a motion for a directed verdict. He concedes that this court has held that the decision of whether to permit the state to present additional witnesses after it has rested is discretionary with the trial judge. However, he contends that here it was an abuse of discretion due to the prejudice that resulted from having six victims single him out in rapid succession.

The appellant is correct that we have held that the trial court has discretionary power to permit the state to reopen its case after the parties have rested and, further, that a trial court's decision to reopen a case will not be reversed absent an abuse of that discretion. *Sanders* v. *State*, 310 Ark. 510, 838 S.W.2d 359 (1992); *George* v. *State*, 306 Ark. 360, 813 S.W.2d 792 (1991); *Cameron* v. *State*, 278 Ark. 357, 645 S.W.2d 943 (1983). The reasoning behind this rule is to permit omitted or overlooked evidence to get to the jury before it returns a verdict, when the defendant is not surprised by the introduction or otherwise prejudiced or placed at some disadvantage that cannot be overcome. *Id*.

Here, there was no surprise. Each victim had referred to the appellant as "Mr. Kenny" or specifically identified him. There could be little doubt that the reference by nickname was to anyone other than the appellant, Kenneth Holloway. Accordingly, the reopening of the case was to further a point that was all but obvious. In this regard, we have said that identification can be inferred from all the facts and the circumstances that are in evidence. *Williams* v. *State*, 308 Ark. 620, 825 S.W.2d 826 (1992); *Becker* v. *State*, 298 Ark. 438, 441,768 S.W.2d 527 (1989). Hence, precise in-court identifications in addition to testimony about what "Mr. Kenny" did may not have been necessary, since he was the sole defendant and none of the victims, though of tender years, pointed him out as the wrong man. *See Becker* v. *State, supra*. Nevertheless, we hold that because the appellant was not surprised or otherwise disadvantaged by the testimony of the witnesses recalled by the state, the trial court did not abuse its discretion by reopening this case.

## III. AMENDED COUNTS

The original felony information, filed on November 12, 1991, charged the appellant in Counts VII and VIII with attempted rape of H.C. and K.K. The amended felony information, filed on March 20, 1992, changed those counts to rape after the girls' testimony at the competency hearing. Holloway now claims that this amendment violated, Ark. Code Ann. § 16-85-407(b) (1987), which provides that an indictment shall not be amended so as to change the nature or degree of the offense charged.

Holloway rightly invokes the statute on the basis that the degree of the offenses was changed when the two counts were amended to rape. However, we can detect no prejudice resulting from the amendment, and this court will not reverse a conviction in the absence of some showing of prejudice. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984). Furthermore, the amendments resulted in no surprise to the appellant. The felony counts were amended on March 20, 1992, and the case was not tried until June 30, 1992, allowing almost three months for any adjustment in preparation. The appellant has not argued that he did not have adequate time to prepare due to the amendment; nor did he seek a continuance. We have held previously that we will not presume prejudice when a defendant fails to move for a continuance or claim surprise after he is put on notice that the state plans to amend an information. *Mitchell* v. *State*, 306 Ark. 464, 816 S.W.2d 566 (1991); *Harrison* v. *State*, 287 Ark. 102, 696 S.W.2d 501 (1985); *Wilson* v. *State*, 286 Ark. 430, 692 S.W.2d 620 (1985). There was no prejudice to the appellant in allowing the trial to go forward.

## IV. COMPETENCY OF CHILD WITNESSES

Holloway claims that the trial court erred in finding L.S., age four, competent to testify because she was not able to demonstrate that she knew the difference between the truth and a lie and also because she did not have good recall of the events. He argues that L.S. could not remember how long it had been since she was at the day-care center, where the Holloways used to take her on excursions, or anything else that happened while she was at the day-care center. In addition, though she testified that the appellant made her perform oral sex, she could not remember

how it happened and did not want to describe the circumstances. Finally, at trial L.S. testified that she did not know what Holloway's "private" was or the difference between the truth and a lie.

With regard to Je.Ca., age six, Holloway claims that at the competency hearing she could not give an example of a lie to demonstrate that she knew the difference from the truth. Secondly, she changed the location of where Holloway sexually molested her in her testimony at the competency hearing, and she could not remember what she was wearing or what the appellant was wearing or many of the details.

■■ We have previously set out the procedure and guidelines for determining the competency of a witness:

> A trial court must begin with the presumption that every person is competent to be a witness. A.R.E. Rule 601. The burden of persuasion is upon the party alleging that the potential witness is incompetent. To meet that burden the challenging party must establish the lack of at least one of the following: (1) the ability to understand the obligation of an oath and to comprehend the obligation imposed by it; or (2) an understanding of the consequences of false swearing; or (3) the ability to receive accurate impressions and to retain them, to the extent that the capacity exists to transmit to the factfinder a reasonable statement of what was seen, felt or heard. (Citing authority.) The competency of a witness is a matter lying within the sound discretion of the trial court and, in the absence of clear abuse, we will not reverse on appeal. (Citing authority.)

*Logan* v. *State*, 299 Ark. 266, 272, 773 S.W.2d 413, 416 (1989); *see also Jackson* v. *State*, 290 Ark. 375, 720 S.W.2d 282 (1986). We have applied the same presumption and standards in deciding the capacity of a child witness to testify. *See, e.g., Richard* v. *State*, 306 Ark. 543, 815 S.W.2d 941 (1991); *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988); *Jackson* v. *State, supra.* We further have observed that the evaluation of the trial court in these cases is particularly important due to its opportunity to observe the child witness and to assess the child's intelligence and understanding of the need to tell the truth. *Jackson* v. *State, supra.*

In this case, L.S., age four, testified at the competency hearing that she would tell the truth. She identified a piece of paper as yellow and blue and testified that it would be a lie to say it was black. She said that she would get in trouble with her parents if she told them a lie. She also testified that cartoons are make-believe and people are real. The trial court found that though she was imprecise in her testimony, she understood the oath and the ramifications if she lied. When asked if Holloway did something to her, the court noted that she specifically said what it was he did. At trial, she identified an example of a lie — again with colors — but could not give an example herself and could not explain the difference between a mistake and a lie or truth and a lie. She repeated her identification of cartoons as make-believe and people as real. She testified that the appellant made her "suck his private," which she described as a hot dog.

The testimony of Je.Ca., age six, was similar. She testified that a piece of paper was yellow and that it was a lie to say it was black and that a lie would get her in trouble. Like L.S., she knew that cartoons were make-believe and that her parents were real. She could not give an example of a lie without reference to a color. She testified that she had been touched "on the private" by Holloway and pointed between her legs. The court found her competent to testify. Subsequently at trial, she could not explain what a lie was and could not say what make-believe meant, but could give examples of both. She testified that Holloway touched her "private" and that he made her touch his "privates."

This case is somewhat complicated by the fact that a different judge presided at trial from the judge at the competency hearing. Nevertheless, neither judge disallowed the girls' testimony on competency grounds. There was no error in this regard.

■ Both girls could identify examples of lying and make-believe at the competency hearing and trial, and each knew the consequences of telling a falsehood. There was, to be sure, some imprecision in the details of the surrounding circumstances and an inability to define concepts such as "truth." But each girl knew she would get in trouble if she told a lie.

With respect to the essentials of their testimony, they specifically described the requisite touching in one case and oral sex in the other. We have held that a child was competent to

testify even when his testimony was not a model of lucidity. *Bowden* v. *State, supra.* Moreover, we conclude, as the trial court undoubtedly did, that the variances in testimony did not warrant a finding of incompetence but were for the jury to resolve. *See McArdell* v. *State*, 38 Ark. App. 261, 833 S.W.2d 786 (1992). We affirm the trial court's rulings.

The record has been examined in accordance with Ark. Sup. Ct. R. 11(f), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.