Robert HOOVER *v.* STATE of Arkansas

CR 02-1150                                    108 S.W.3d 618

Supreme Court of Arkansas
Opinion delivered May 29, 2003

G.B. *"Bingo" Colvin, III*, public defender, for appellant.

*Mike Bebee*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Robert A. Hoover appeals his convictions and sentences of life without parole and life for capital murder and aggravated robbery. Hoover asserts first that the trial court erred in allowing the State to amend the felony information in violation of Ark. Code Ann. § 16-85-407 (1987), and in violation of the trial court's omnibus order. We hold that Hoover fails to show he suffered any prejudice by the amended felony information. Hoover also asserts the trial court erred in refusing to excuse prospective jurors for cause who indicated they would not consider self-intoxication as a mitigating circumstance. Because Hoover was not sentenced to death, he lacks standing to challenge the trial court's decision on excusing jurors who refused to consider the mitigating circumstance of self-intoxication. We find no error in this case and affirm.

### Facts

According to Hoover's written statement, he and his girlfriend Amanda Helton moved into James Wesley Masters's apartment in October 2000, and remained there for about two months. During these two months, Hoover and Helton watched Masters to determine what personal property and money he had. According to Hoover, while he and Helton were living with Masters, they planned his murder and robbery, but they did not carry out their plans until later when they got a chance to move to Florida. Hoover stated that on December 28, 2000, he and Helton went to Masters's apartment for the purpose of robbing and killing him to obtain money to move to Florida. Hoover further recounts that once in Masters's apartment that night, he waited until Masters turned his back and then stabbed Masters "a few times." Hoover

stated that he used his hunting knife to stab Masters. Masters fell to the floor and then crawled to a corner while begging for his life. Hoover stated that he helped Masters to his feet and then stabbed Masters again, but Masters tried to block the knife with his hands. Dr. Stephen Erickson of the Arkansas Medical Examiner's Office testified Masters suffered knife wounds to his hands.

According to Hoover, Helton came up and knocked on the window after he stabbed Masters. She had been waiting in Hoover's truck downstairs. While Hoover was letting her in, Masters crawled to a bedroom and was attempting to close the door when Hoover came back and kicked the door open. Hoover said that at this time, Helton complained that Hoover had not finished Masters off yet. Hoover stated that he then grabbed Masters's hair, lifted his head back, and slashed his throat. According to Dr. Erickson's testimony, Masters's jugular vein was entirely severed and his carotid artery was partially severed.

After the murder, Hoover and Helton took Masters's cash, which amounted to about $200, and a cassette player. They then proceeded to the Saline River where they threw the murder weapon in the river and burned some of their bloody clothing.

Once in Florida, Hoover and Helton began to fight. Hoover apparently began to feel remorse for killing Masters and wrote out a statement describing the killing and robbery. Hoover also made calls to his father in Monticello, Arkansas. Based on the phone calls and other evidence, Hoover was interviewed by the Arkansas State Police in Florida. He turned over the statement to police, and was returned to Arkansas where he stood trial in March 2002.

### Amended Felony Information

Hoover alleges that the felony information was amended in violation of Ark. Code Ann. § 16-85-407, and the trial court's omnibus order. The original felony information charged Hoover with felony capital murder and robbery. The felony underlying capital murder in the original felony information was robbery. On March 21, 2002, four days before trial, the State filed an amended felony information substituting the charge of aggravated robbery for robbery as the felony underlying the capital murder charge. The

amended felony information also substituted aggravated robbery for the separate charge of robbery in the original information.

■ Hoover invokes Ark. Code Ann. § 16-85-407 in arguing that the amendment was improper. Section 16-85-407 provides procedure and limitations on amending indictments. *See Holloway v. State*, 312 Ark. 306, 849 S.W.2d 473 (1993). This section was enacted as section 24 of Initiated Act 3 of 1937. In *Underwood v. State*, 205 Ark. 864, 171 S.W.2d 304 (1943), this court stated that Act 3 was adopted by the people to simplify procedure in criminal cases and eliminate some technical defenses then used by criminal defendants.

■ However, with respect to allegations of improper amendments under the terms of section 16-85-407, this court has stated that section 16-85-407 relates to matters of notice and prejudice. *Abernathy v. State*, 278 Ark. 250, 644 S.W.2d 590 (1983). Section 16-85-407 provides a criminal defendant with protection against being prejudiced through surprise. *McElhanon v. State*, 329 Ark. 261, 948 S.W.2d 89 (1997).[1] Where an amendment misleads or impedes a criminal defendant in making a defense, a motion to quash under Section 16-85-407 may be proper. *Underdown v. State*, 220 Ark. 834, 250 S.W.2d 131 (1952).

There is no prejudice or surprise in this case. Hoover admitted at trial that he was not surprised by the amendment. In any event, it would be difficult to imagine that Hoover would be surprised in this case. Hoover confessed to planning and then stabbing Masters to death to obtain money. Obviously, where a robbery results in death, deadly force was used. The distinction between robbery and aggravated robbery is that aggravated robbery includes the added element of being "armed with a deadly weapon." Ark. Code Ann. § 5-12-103 (Repl. 1997). In addition, the arrest warrant served on Hoover alleged he was charged with aggravated robbery. Clearly, Hoover was not surprised to be accused of robbing and killing Masters with a deadly weapon.

---

[1] *McElhanon v. State*, was not expressly overruled in *McCoy v. State*, 347 Ark. 913, 69 S.W.3d 430 (2002), however, the court in *McCoy* retreated from the holding in *McElhanon* and other cases in so far as they conflicted with Ark. Code Ann. § 5-1-110 (Repl. 1997), with respect to determining when an offense is a lesser-included offense.

■ We also note that Hoover does not argue that he was surprised or that he was unprepared to meet the change in the criminal charges. He does not argue that he was unable to defend himself on the charges. There is no evidence that the amended information impaired Hoover in any way in putting on his defense.

■ The sort of amendment that creates prejudice was discussed in *Abernathy, supra*:

> We have interpreted Ark. Stat. Ann. 43-1024[2] to relate to matters of notice and prejudice. *See Harmon v. State*, 277 Ark. 265, 641 S.W.2d 21 (1982); *Swaite v. State*, 274 Ark. 154, 623 S.W.2d 176 (1981). We recognize the importance of this statute in preventing eleventh-hour amendments and amendments made after trial has begun. The application of the statute was recently demonstrated in *Harmon, supra*. There, the defendant was charged with murder in the course of kidnapping, but the information was amended to charge in the alternative, murder in the course of robbery. We found error in the trial court's allowing the amendment to be made the morning of the trial, after the jury had been sworn in. It is this sort of prosecutorial action that constitutes prejudice to a defendant that 43-1024 prohibits.

*Abernathy*, 278 Ark. at 252-53. Thus, even where there is a change in nature or degree this court will analyze whether there was adequate notice and whether the criminal defendant was prejudiced.

■ This was an eleventh hour amendment. In *Holloway v. State*, 312 Ark. 306, 849 S.W.2d 473 (1993), this court stated:

> Holloway rightly invokes the statute on the basis that the degree of the offenses was changed when the two counts were amended to rape. However, we can detect no prejudice resulting from the amendment, and this court will not reverse a conviction in the absence of some showing of prejudice. *Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984). Furthermore, the amendments resulted in no surprise to the appellant. The felony counts were amended on March 20, 1992, and the case was not tried until June 30, 1992, allowing almost three months for any adjustment in preparation. The appellant has not argued that he did not have adequate time to prepare due to the amendment; nor did he seek a continuance. We have held previously that we will not presume

---

[2] Ark. Code Ann. § 16-85-407 was formerly Ark. Stat. Ann. § 43-1024.

> prejudice when a defendant fails to move for a continuance or claim surprise after he is put on notice that the state plans to amend an information. *Mitchell v. State*, 306 Ark. 464, 816 S.W.2d 566 (1991); *Harrison v. State*, 287 Ark. 102, 696 S.W.2d 501 (1985); *Wilson v. State*, 286 Ark. 430, 692 S.W.2d 620 (1985). There was no prejudice to the appellant in allowing the trial to go forward.

*Holloway*, 312 Ark. at 313. Likewise, Hoover fails to show that he suffered prejudice in this case.

■ We should also note that Hoover made no motion for a continuance. In light of the fact that counsel admitted at trial that there was no surprise in the amended information, and where no continuance was requested, and no prejudice was shown, there is no need for reversal under Ark. Code Ann. § 16-85-407, as it has been interpreted by this court. *See Smith v. State*, 310 Ark. 247, 837 S.W.2d 279 (1992); *Traylor v. State*, 304 Ark. 174, 801 S.W.2d 267 (1990); *Crafton v. State*, 274 Ark. 319, 624 S.W.2d 440 (1981).

■ Hoover also alleges that the amendment to the felony information was made in violation of the trial court's omnibus order. This argument is made for the first time on appeal. The record contains no written motion to quash the Amended Information, and when Hoover raised and argued the issue the morning of trial, he never mentioned the omnibus order. This court will not consider an argument raised for the first time on appeal. *Threadgill v. State*, 347 Ark. 986, 69 S.W.3d 423 (2002).

Thus, even if the amendment changed the degree of the crime in violation of Ark. Code Ann. § 16-85-407, there was no surprise and no prejudice. Therefore, there is no merit to Hoover's claim of error on this issue.

### Jury Selection

■ ■ Hoover also asserts that the trial court erred in refusing to excuse jurors for cause who indicated in *voir dire* that they would not consider the mitigating circumstance of self-intoxication. Mitigating circumstances are weighed against aggravating circumstances when a jury is deliberating whether to impose the death penalty. *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555

(1995). Hoover was not sentenced to death. Because he did not receive a death sentence, Hoover lacks standing to raise errors having to do with the death penalty. *Hamilton v. State*, 348 Ark. 532, 74 S.W.3d 615 (2002). Therefore, we will not address the issue of the jurors who indicated they would not consider the mitigating circumstance of self-intoxication.

### Rule 4-3(h)

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

CORBIN, J., not participating.