Quenton GAYE *v.* STATE of Arkansas

CR 06-629                                          243 S.W.3d 275

Supreme Court of Arkansas
Opinion delivered November 16, 2006

*Jeff Rosenzweig*, for appellant.

*Mike Beebe*, Att'y Gen., by: *LeaAnn J. Irvin*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Quenton Gaye was convicted of capital murder in the death of Christopher Branch and three counts of terroristic act for shooting at an automo-

bile occupied by Christopher Higgins, Andre Higgins, and Courtney Barnes. Gaye was sentenced to life without parole for the capital-murder conviction and twenty years' consecutive imprisonment for the terroristic-act convictions. From the circuit court's judgment and commitment order, this appeal arises, wherein Gaye argues only that the circuit court erred in denying his motion for directed verdict on the capital-murder charge. We affirm Gaye's conviction.

The facts of this case involve a crime spree that took place on April 13, 2005. Courtney Barnes — a life-long acquaintance of the victim, Christopher Branch, and Gaye — was an eye witness to both Branch's murder and the terroristic acts. Barnes testified that around noon that day he had lunch with Christopher Higgins and Andre Higgins at Brewster's 2 Cafe, a restaurant on Arch Street in Little Rock. As they were finishing their lunch, Gaye and an unknown male entered the restaurant and approached them. He stated that Gaye asked them why they were "messing with his sister." Barnes stated that he went to the restroom to avoid a conflict, but the owner of Brewster's soon made all the men leave the restaurant. Barnes and his friends left the area in a white Oldsmobile Cutlass Supreme automobile. As they approached the corner of 26th and Arch Street, Barnes stated that Gaye was waiting on them, standing outside of an automobile, and began shooting at the car. The car was damaged, but no one in the car was injured. A picture of the Oldsmobile was admitted into evidence. Occupant Christopher Higgins corroborated these facts at trial.

Barnes next explained that he left the Higgins boys after the shooting and met up with the victim, Christopher Branch, and Derrick, a.k.a. D.P. While in D.P.'s car, the three men went back to Brewster's for D.P. to meet up with his cousin. D.P. got out of the car to meet the cousin and advised Barnes and Branch to go get some gas. Barnes stated that he drove D.P.'s car to the gas station, with Branch occupying the passenger seat. Once at the gas station, Barnes recounted that, while he and Branch were speaking with a man at the station, he was alerted to danger when he saw the man unexpectedly throw his arms in the air and run away. Barnes testified that he turned around and saw Gaye approaching them in the car, pointing a pistol at their direction. Barnes stated that he and Branch both dove out of the car, and he took off running down Roosevelt Street. Barnes stated that he then heard gunshots, and he did not see Branch after that. Barnes ran to a friend's house for safety.

There were other witnesses to Branch's murder, but none of the other witnesses were able to positively identify Gaye as the shooter. For instance, at trial, Theodis Kitchens testified that, while stopped at a traffic light, he heard shots and saw a man running in his direction, and saw a second man following while shooting. He saw Branch fall and he saw the shooter turn and walk south on Martin Luther King Drive, at which time an older model car came around and shot at Branch again.[1] Napoleon Talley, who worked at the liquor store across the street from the gas station, attested that he witnessed the shooting as well. He stated that he heard the original gun shots and looked across the street, where he saw a male down on the ground "moving erratically." He stated that he saw the shots coming from a car, and the car had a gun barrel or rifle sticking out of it.

Gaye's defense at trial was that he had an alibi at the time of the shooting. His aunt, Diane Jones, stated that when she returned home for lunch, Gaye was there but was "into it" with Branch because Branch had taken her daughter at "gunpoint." In order to get Gaye out of the area, she took him over to her brother's home. Jones's brother, Walygyden Athtab, formerly Tyrone Gaye, testified that he was with Gaye for the rest of the afternoon and early evening. However, the record reflects that Jones never reported Gaye's alibi to the police, and the Prosecuting Attorney, on cross-examination, questioned why she waited until Gaye's trial to indicate that he had an alibi that day. The sole question on appeal is whether there is sufficient evidence to support Gaye's capital-murder conviction.

Gaye contends that the circuit court erred in denying his motion for directed verdict. We treat a denial of a directed verdict motion as a challenge to the sufficiency of the evidence. *Terry v. State*, 366 Ark. 441, 236 S.W.3d 495 (2006). When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in a light most favorable to the State and considers only the evidence that supports the verdict. *Gillard v. State*, 366 Ark. 217, 234 S.W.3d 310 (2006). We affirm a judgment of conviction if substantial evidence exists to support it. *Id.*

---

[1] The record reflects that Gaye is a large man, standing at around six feet, five inches tall, and weighing over 300 lbs. After the shooting, Theodis Kitchens gave a general description of the shooter, indicating that he was a black male around six feet, weighing around 170 – 180 lbs.

Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Circumstantial evidence may constitute substantial evidence to support a conviction. *Id.* The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

The sum and substance of Gaye's argument is that Barnes's testimony "does not jibe with anybody else's testimony." In other words, Gaye submits that the jury resorted to speculation and conjecture because inconsistent testimony was presented at trial. This argument is without merit.

■ Pursuant to Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2003), a person commits capital murder if, "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of another person." According to the evidence presented at trial, Barnes testified numerous times that he saw Gaye shoot Christopher Branch. While the other witnesses to the shooting were unable to identify Gaye as the shooter, Barnes's testimony alone that Gaye was the shooter is enough to sustain his conviction. *Williams v. State*, 338 Ark. 178, 992 S.W.2d 89 (1999) (holding that one eyewitness's testimony is sufficient to sustain a conviction in a capital-murder case).

■ Moreover, Gaye's argument that Barnes's testimony is in conflict with the other witnesses' testimony must also fail. The essence of this point is that Kitchens's general description of the shooter (as a six-foot black male, weighing around 170-180 lbs) conflicts with the fact that Gaye is a large man (standing around six feet, five inches, weighing more than 300 lbs). However, when the prosecutor asked Kitchens if he was good at guessing weights, he stated, "No, at the time it was just a lot of confusion happening, and you know, you really wasn't looking, just trying to get out of the line of fire and check on the young man." Most importantly, though, it is for the jury to determine the credibility of a witness. *Watson v. State*, 358 Ark. 212, 188 S.W.3d 921 (2000). The jury may select to believe that Kitchens was mistaken as to Gaye's

physical description, and we cannot disturb that decision on appeal. *Henry v. State*, 278 Ark. 478, 647 S.W.2d 419 (1983). Consequently, we must conclude that there is substantial evidence to support Gaye's capital-murder conviction.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions and requests made by either party that were decided adversely to Gaye, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

IMBER, J., not participating.