Pamela Kaye TERRY *v.* STATE of Arkansas

CR 06-688                                                         263 S.W.3d 528

Supreme Court of Arkansas
Opinion delivered September 27, 2007

*The Blagg Law Firm*, by: *Ralph J. Blagg*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Pamela Kaye Terry was convicted of capital murder in the death of her estranged husband James "Michael" Terry. She was also convicted of robbery and theft of property. Pamela was sentenced to life without parole for the capital-murder conviction, thirty years' imprisonment for the robbery conviction, and twenty years' imprisonment for the theft-of-property conviction. From the circuit court's judgment and commitment order, this appeal arises, wherein Pamela argues four points for reversal. We affirm her convictions.

On July 16, 2004, Pamela was arrested at a Little Rock bus station for public intoxication. After she was transported to the city jail, she subsequently told the arresting police officer that she had killed her husband in their home outside of Clinton. After being read her rights and waiving those rights, Pamela confessed that she had shot Michael in their home about two weeks earlier, because he was abusing her and would not allow her to leave. She stated that he was asleep in his chair when she shot him. In her confession, Pamela claimed lack of memory and mental illness, but she was able to explain that, after shooting him, she placed a blanket over him, took $300 and his Visa card from his wallet, fled

in his car, and, later, drove to Little Rock with an ex-boyfriend. In addition, she admitted that she had used his Visa card at local ATMs on three occasions.

The Little Rock Police Department contacted the Van Buren County Sheriff's Department, and, upon arriving at the home in Dennard, police found Michael's body in a chair covered by a red blanket. Evidence revealed that Michael had sustained a gunshot wound to the head and had been dead for some time.

The State initially charged Pamela with capital murder under the felony-murder provision; she was also charged with three counts of theft of property. During discovery, the Van Buren County Circuit Court ordered a mental health evaluation for Pamela pursuant to Ark. Code Ann. § 5-2-305 (Repl. 1997). William Cochran, Ph.D., performed a forensic evaluation on Pamela, and he gave her an Axis-I diagnosis of bipolar disorder and alcohol abuse. Dr. Cochran recommended that Pamela be placed in the Forensic Unit of the Arkansas State Hospital "to resolve complex diagnostic issues." The circuit court then entered an order sending her to the State Hospital for additional testing. At the State Hospital, Michael Simon, Ph.D., issued an evaluation of Pamela, diagnosing her only with alcohol dependence. It was Dr. Simon's opinion that Pamela did not have a mental disease or defect.

Five days prior to trial, the State filed an amended informa-tion, adding an additional element for capital murder — the premeditated and deliberated provision — and amending one of the three theft-of-property charges to aggravated robbery. The State also filed second and third felony informations, wherein the State dropped one theft-of-property charge. In short, the State proceeded to trial, charging Pamela with (1) capital murder under the felony-murder *and* premeditated and deliberated provisions, (2) aggravated robbery, and (3) one count of theft of property. On the day of trial, in a pre-trial hearing, Pamela filed an oral motion to prohibit the State from filing its amended informations chang-ing the theft-of-property charge to aggravated robbery; however, the circuit court denied her oral motion.

Pamela stood trial in Van Buren County on November 15, 16, 17, and 18, 2005. At trial, she raised the affirmative defense of mental disease or defect, contending that she lacked the capacity to appreciate the criminality of her conduct. In the State's case in chief, Pamela disputed the circuit court's decision to allow certain

photos into evidence, arguing that the photos were cumulative and were only being used by the State to incite the jury. Moreover, at the close of the State's case, Pamela filed motions for directed verdict on the capital murder and aggravated robbery charges, which were denied by the circuit court. She then rested without presenting any additional witnesses. Before the case was submitted to the jury, Pamela argued that the circuit court should not allow the "premeditated and deliberated purpose" instruction to be included in the capital murder jury instruction, but the circuit court allowed it. As stated earlier, the jury returned a guilty verdict on the capital murder, robbery,[1] and theft of property charges. Pamela was sentenced the same day, wherein the circuit court imposed a life sentence without parole for the capital murder conviction, thirty years' imprisonment for the robbery conviction, and twenty years' imprisonment for the theft-of-property conviction. From this judgment and commitment order, Pamela appeals.

Pamela first contends that the circuit court erred in denying her motion for directed verdict on the capital-murder charge because there was insufficient evidence to prove, in accordance with Ark. Code Ann. § 5-10-101(a) (Repl. 1997), that Michael's killing was in the furtherance of a felony, specifically a robbery. While this argument is not the first argument presented by Pamela, for double-jeopardy purposes, we will review this issue first to be consistent with our case law. *Wright v. State*, 368 Ark. 629, 249 S.W.3d 133 (2007). Our standard of review on this issue is familiar. We treat a denial of a directed verdict motion as a challenge to the sufficiency of the evidence. *Gaye v. State*, 368 Ark. 39, 243 S.W.3d 275 (2006). When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in a light most favorable to the State and considers only the evidence that supports the verdict. *Id.* We affirm a judgment of conviction if substantial evidence exists to support it. *Id.*

Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Circumstantial evidence may constitute substantial evidence to support a conviction. *Id.* The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that

---

[1] The State charged Pamela with aggravated robbery, but the jury was instructed and convicted her of the lesser-included offense of robbery.

of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

Section 5-10-101 states in pertinent part:

(a) A person commits capital murder if:

(1) Acting alone or with one (1) or more other persons:

(A) The person commits or attempts to commit:

. . . .

(v) Robbery, § 5-12-102;

(vi) Aggravated robbery, § 5-12-103;

. . . .

and

(B) In the course of and in furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life[.]

. . . .

(4) With the premeditated and deliberate purpose of causing the death of another person, the person causes the death of any person.

At trial, the following jury instruction was submitted:

Capital Murder. Pamela Kaye Terry is charged with the offence of capital murder. To sustain this charge, the State must prove the following things beyond reasonable doubt:

First, that Pamela Kaye Terry committed the crime of aggravated robbery or robbery; *and,*

> Second, that in the course of and in the furtherance of that crime, Pamela Kaye Terry caused the death of Michael — James Michael Terry under circumstances manifesting an extreme indifference to the value of human life; *or*,
>
> Third, that with the premeditated and deliberated purpose of causing the death of another person, Pamela Kaye Terry caused the death of James Michael Terry.

(Emphasis added.)

On appeal, Pamela submits that there is insufficient evidence to prove that she committed the underlying felony, and, thus, the circuit court should have granted her motion for directed verdict on the capital-murder charge. In reply, the State argues that, because the jury entered a general verdict on the capital-murder conviction, there is no way to discern whether the jury convicted Pamela under the felony-murder provision of the above-quoted statute *or* the latter provision of that same statute, which instructs a jury to convict if they found that Pamela caused Michael's death with premeditation and deliberation.

In *Griffin v. United States*, 502 U.S. 46 (1991), the jury rendered a general verdict of guilty on a multiple-object conspiracy charge. In challenging the sufficiency of the evidence, the question before the Court was whether there was sufficient evidence to sustain a guilty verdict when there was insufficient evidence to support one of the objects of conspiracy. The Supreme Court held that the general verdict of guilty was valid so long as it was legally supportable by one ground. *See also Bunch v. State*, 94 Ark. App. 247, 228 S.W.3d 534 (2006).

■ Here, the jury was instructed pursuant to § 5-10-101(a)(1) & (a)(4), and the jury rendered a general verdict of guilty on capital murder. On appeal, however, Pamela's only challenge to the capital-murder conviction is that there was insufficient proof of her underlying felony (robbery) pursuant to § 5-10-101(a)(1). However, because the jury was also instructed pursuant to § 5-10-101(a)(4), the jury could have convicted on either capital-felony murder or premeditated-and-deliberated murder. Given the general guilty verdict, we must conclude that there is sufficient evidence under one of the instructed elements for either subsections (a)(1) or (a)(4).

■ Our conclusion is based in part on the fact that, as will be discussed in greater depth in point two, there was sufficient

evidence to support the underlying felony of robbery in Pamela's capital-murder conviction. In addition, Pamela, by her own admission, indicated that Michael had been mean to her, and she had wanted to leave him for some time. She shot Michael in the head after he fell asleep in his chair, taking his cash, Visa card, and car. Because there is sufficient evidence to support her conviction for capital-felony murder, we affirm.

▉ Pamela next argues that the circuit court erred when it denied her motion for directed verdict on the robbery charge. Arkansas Code Annotated section 5-12-102(a) states:

> A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, he employs or threatens to immediately employ physical force upon another person.

Pamela contends that there was no evidence presented to the jury to conclude that she employed or threatened to immediately employ physical force upon Michael with the purpose of committing a felony or misdemeanor theft. Keeping in mind the standard of review on a sufficiency review, we must affirm. Evidence at trial revealed that, after shooting Michael in the head, Pamela took Michael's cash and Visa card from his wallet. She took the money and traveled in Michael's car to an ex-boyfriend's apartment. The two traveled to Little Rock and withdrew the maximum amount of money, using Michael's Visa card on three separate occasions. The following colloquy took place in Pamela's taped confession:

> OFFICER: When you went up there and got the money out of his billfold what were your intentions.
>
> PAMELA: Getting away.
>
> OFFICER: Why did you want.
>
> PAMELA: Cause I have been wanting to leave for a long time.

The record reveals that Pamela, who was angry at Michael, had wanted to leave Michael for a long time. She waited until Michael was asleep, shot him in the head, and took his cash, credit card, and car.

Clearly, this is substantial evidence to indicate that with the purpose of "committing a felony or misdemeanor theft," Pamela employed physical force on Michael by shooting him. The State's proof clearly supported the robbery conviction.

Pamela next argues that the circuit court erred in admitting certain crime scene photos into evidence. Our standard when reviewing the admission of photographs is well settled. As with other matters pertaining to the admissibility of evidence, the admission of photographs is a matter left to the sound discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Springs v. State*, 368 Ark. 256, 244 S.W.3d 683 (2006). When photographs are helpful to explain testimony, they are ordinarily admissible. *Id.* Moreover, the mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. *Id.* Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. *Id.* Additional acceptable purposes are to show the condition of the victim's body, the probable type or location of the injuries, and the position in which the bodies were discovered. *Id.* Lastly, an inflammatory or gruesome photograph should only be excluded if it is without any valid purpose. *Id.*

The circuit court did not abuse its discretion in admitting these photographs. At trial, Pamela challenged the admissibility of State exhibits 48, 49, 50, 52 and 53. These photographs illustrate the state of the body, as it was found at the crime scene. The circuit court, after excluding some photos, admitted these photos because they were helpful to the jury in explaining the testimony. Moreover, despite Pamela's argument otherwise, the circuit court concluded that the pictures were not cumulative. Instead, the circuit court ruled that the photos depicted the condition of the body, the type and location of the injuries, and the location of the evidence in the room. Consequently, we must affirm the circuit court's decision as it did not abuse its discretion.

Finally, Pamela argues that the circuit court erred in allowing the "premeditated and deliberated purpose" language from § 5-10-101(a)(4) to be included in the capital-murder jury instruction. The facts reveal that the original felony information charged Pamela with capital murder, alleging that, pursuant to § 5-10-

101(a)(1), Pamela committed felony murder. However, five days before trial, the State filed an amended felony information, and two others following, charging Pamela with capital murder pursuant to § 5-10-101(a)(1) *and* (a)(4), adding the premeditated-and-deliberated provision. Pamela now contends that the alteration in the language did not inform her of the specific crime with which she was charged, and, thus, she was unable to effectively prepare her defense. This argument is without merit.

In *Nance v. State,* 323 Ark. 583, 918 S.W.2d 114 (1996), we said that a pretrial amendment of an information that charged capital murder on the basis of felony murder to add, as an alternative, the charge of capital murder on the basis of premeditated and deliberated purpose, does not change the nature of the crime charged in violation of Ark. Code Ann. § 16-85-407(b). In *Hoover v. State,* 353 Ark. 424, 108 S.W.3d 618 (2003), Hoover alleged that the State's felony information was amended too late to provide him with sufficient notice, and, therefore, he was prejudiced as a result. In that case, the original felony information charged Hoover with capital felony murder and robbery. The felony underlying capital murder in the original felony information was robbery. Four days before trial, the State filed an amended felony information substituting the charge of aggravated robbery for robbery as the felony underlying the capital-murder charge. The amended felony information also substituted aggravated robbery for the separate charge of robbery in the original information. We stated in the *Hoover* case the following:

> [W]ith respect to allegations of improper amendments under the terms of section 16-85-407, this court has stated that section 16-85-407 relates to matters of notice and prejudice. *Abernathy v. State,* 278 Ark. 250, 644 S.W.2d 590 (1983). Section 16-85-407 provides a criminal defendant with protection against being prejudiced through surprise. *McElhanon v. State,* 329 Ark. 261, 948 S.W.2d 89 (1997). Where an amendment misleads or impedes a criminal defendant in making a defense, a motion to quash under Section 16-85-407 may be proper. *Underdown v. State,* 220 Ark. 834, 250 S.W.2d 131 (1952).

In sum, we concluded that there was no prejudice or surprise in *Hoover, supra,* noting that "it would be difficult to imagine that Hoover would be surprised [by the amended felony information] in this case. Hoover confessed to planning and then stabbing [the victim] to death to obtain money. Obviously, where a robbery results in death, deadly force was used." *Id.* at 428, 108 S.W.3d at 620.

As was the situation in *Hoover, supra*, here, it would be difficult to imagine that Pamela was "surprised" by the State's change in the amendments. Pamela admitted Michael would not allow her to leave him, so she shot him in the head when he was asleep in a chair at home and then fled the crime scene with Michael's cash, Visa card, and car. From her admission and description of why and how she killed Michael, her actions reflected her premeditation and deliberation employed when she murdered him. Accordingly, Pamela cannot claim that she did not have "notice" of the addition of the premeditation-and-deliberation subsection of the capital-murder statute in the information. Pamela simply failed to show that she was prejudiced by the State's amendment of this information.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions and requests made by either party that were decided adversely to Pamela, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.