
SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CR–16–106

| | |
|---|---|
| | **Opinion Delivered:** November 3, 2016 |
| THOMAS CONAN ORTEGA | |
| V. | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [26CR–14–533] |
| STATE OF ARKANSAS | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Thomas Conan Ortega appeals his conviction for rape, for which he was sentenced as a habitual offender to life imprisonment. On appeal, he challenges the sufficiency of the evidence supporting his conviction and argues that the trial court erred when it refused to submit the jury verdict form by interrogatories. Because appellant was sentenced to life imprisonment, this court's jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2015). We affirm.

Appellant was charged as a habitual offender in the Garland County Circuit Court with rape under two alternative theories: that he engaged in sexual intercourse or deviate sexual activity with another person by forcible compulsion or that the victim was incapable of consent because she was physically helpless. At appellant's jury trial, the victim testified that on the morning of July 4, 2014, her husband left their home in Mountain Pine to join a motorcycle club, which had been a subject of contention between the couple. That night at around 10:30, she left her cell phone with her children and her stepson in case of an

emergency and drove to downtown Hot Springs to meet her husband. They had drinks at several clubs, she became intoxicated, and the couple began to argue. As they were leaving on her husband's motorcycle, she got off. She expected him to go back to get her, but he drove to his mother's house; the victim was very upset and was crying hysterically on a curb when appellant approached her. She told appellant that she needed to get to her car, and he offered to help her; he put his arm around her, helping her walk, and they walked together for several blocks to a house on Grand Avenue. They went onto the porch, and appellant, who claimed to live there,[1] knocked on the door. While they were sitting on the porch, appellant tried to kiss her, and she told him, "I can't kiss you." At that point, she got up and told appellant that she needed to get home. They walked around to the side of the house, at which point appellant knocked on the door of a smaller house, and the victim saw a Rent-A-Center sign and recognized Central Avenue, where her car was parked. As she attempted to part ways with appellant, he put her in a choke hold and she passed out. She awoke inside a dumpster, opened the lid, and saw the Rent-A-Center sign. She realized that she had blood on her hands and face and that she was sore in her genital area,[2] and she ran toward Central Avenue seeking help. She collapsed in the street, and two 911 dispatchers in separate vehicles saw her and stopped to help. They testified that they were driving home at around 6:00 a.m. after working a shift, and they found the victim crying,

---

[1] The house was later identified as belonging to appellant's brother.

[2] The victim further testified on cross-examination that the soreness she experienced in her genital area had never happened to her before during "normal, voluntary" sexual intercourse.

very emotional and upset, and covered in blood. She stated that she had been raped. She was taken by ambulance to the hospital, and medical staff there collected a rape kit. The nurse testified that the victim had a lot of dirt and debris (such as leaves) in her mouth, her genital area, and her undergarments and clothing. The emergency-room physician who treated the victim testified that she had tenderness and bruising on her neck that were consistent with choking and were not consistent with her wearing a c-collar in the ambulance and upon admission to the hospital. Expert testimony was presented that appellant's DNA was present on the vaginal swab from the rape kit. In addition, the jury saw photographs of the victim's injuries. Detective Patrick Langley testified that he interviewed appellant on July 5, and appellant denied knowing, or having any involvement with, the victim. At that time, Det. Langley photographed injuries to appellant's leg, arm, torso, and hands; the injuries appeared to be recent, and included scratches and redness. About one month later, Detective Langley interviewed appellant a second time, and he again stated that he did not know the victim and did not have any kind of sexual involvement with her.

For his first point on appeal, appellant argues that the trial court erred in denying his motion for directed verdict; he contends that the State failed to present sufficient evidence to support a conviction for rape under either theory—by forcible compulsion or because the victim was physically helpless. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Jeffries v. State*, 2014 Ark. 239, at 3, 434 S.W.3d 889, 893. Substantial evidence is evidence forceful enough to compel a conclusion one way or the

other beyond suspicion or conjecture. *Id*. This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id*.

A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Ark. Code Ann. § 5-14-103(a)(1) (Repl. 2013). A person also commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is incapable of consent because he or she is physically helpless. Ark. Code Ann. § 5-14-103(a)(2)(A). Those terms are defined in our criminal code as follows. "Sexual intercourse" means penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(11). "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. *Id*. § 5-14-101(2). "Physically helpless" means that a person is unconscious; physically unable to communicate a lack of consent; or rendered unaware a sexual act is occurring. *Id*. § 5-14-101(7). Here, defense counsel made a specific motion for directed verdict at the close of the State's case, and renewed the motion at the close of all evidence. The circuit court denied the motions.

In his brief, appellant recounts the evidence favorable to his position and asks this court to make credibility determinations. He contends that "substantial evidence supports an act of consensual sexual intercourse." Appellant points to evidence that the victim was angry with her husband; that she had been drinking on July 4 and into the early morning hours of July 5, 2014; that her anger continued when her husband left her "stranded"; that a witness saw her willingly walking down the street with appellant; that she had no recollection of what had happened between allegedly being choked and waking up in a

SLIP OPINION

dumpster. Appellant argues that the redness and pain on her neck was due to the c-collar she wore, not appellant choking her, and that any minor injuries she had were likely from her fall on Central Avenue. Regarding the "physically helpless" charge of rape, appellant appears to argue that the evidence was insufficient to show that the victim was actually too intoxicated to consent to sexual intercourse.

In short, appellant asks this court to disbelieve the victim's testimony and the other, circumstantial evidence of rape and to believe the defense's theory of the case. But this court does not make credibility determinations. *See Simpson v. State*, 355 Ark. 294, 300, 138 S.W.3d 671, 675 (2003) ("[I]t is the sole province of the jury to determine a witness's credibility, as well as the weight and value of his testimony.") Furthermore, circumstantial evidence constitutes substantial evidence when every other reasonable hypothesis consistent with innocence is excluded. *Nance v. State*, 323 Ark. 583, 591–92, 918 S.W.2d 114, 117 (1996). Here, there was evidence that the victim was unconscious (and thus physically helpless) when appellant forcibly engaged in sexual intercourse with her against her will. Properly viewing the evidence in the light most favorable to the State, we hold that there was substantial evidence of rape under both alternate theories of the case. Therefore, we affirm on this point.

For his second point on appeal, appellant argues that the trial court should be reversed and his case remanded for a new trial because the court erred when it refused to submit the jury verdict form by interrogatories. At trial, the State initially agreed to such a verdict form; it later objected and requested a general verdict form, citing *Terry v. State*, 371 Ark. 50, 263 S.W.3d 528 (2007). In *Terry*, the defendant was charged with capital murder under

the felony-murder and premeditated-and-deliberated provisions of the statute; the jury rendered a general verdict of guilty, and this court affirmed the conviction. Appellant is correct that the issue of the propriety of the general verdict form was not addressed in *Terry*; however, appellant offered no authority or convincing argument to meet his burden of showing that use of the model verdict form was improper. On appeal, appellant contends that the general verdict form allowed the jury to convict him without a unanimous decision on either alternate theory of rape, and that the court committed reversible error when it refused his proffered nonmodel-verdict form requiring the jury to unanimously find him guilty of rape by forcible compulsion, guilty of rape because the victim was physically helpless, or not guilty. In assessing whether a circuit court should have submitted a proffered nonmodel-verdict form to the jury, this court uses the same standard that it applies when considering whether a proffered nonmodel jury instruction is warranted. *Perry v. State*, 2014 Ark. 535, 453 S.W.3d 650. This court has held that nonmodel jury instructions are to be given only when the circuit court finds that the model instructions do not accurately state the law or do not contain a necessary instruction on the subject. *Id.* Further, just because a proffered jury instruction may be a correct statement of the law does not mean that a circuit court must give the proffered instruction to the jury. *Id.* This court will not reverse a circuit court's decision to give or reject an instruction unless the court abused its discretion. *Id.*

We do not reach the merits of appellant's argument because he cites no authority whatsoever in support of his argument and it is not apparent without further research that his argument is well taken. This court has repeatedly held that it will not consider an argument that presents no citation to authority or convincing argument. *E.g., Kelly v. State,*

350 Ark. 238, 241, 85 S.W.3d 893, 895 (2002); *Strong v. State*, 372 Ark. 404, 419, 277 S.W.3d 159, 170 (2008) ("We will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support and it is not apparent without further research that the argument is well taken.")

Pursuant to Arkansas Supreme Court Rule 4–3(i), the record has been reviewed for all objections, motions, and requests that were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.

GOODSON, J., concurs.

DANIELSON and HART, JJ., dissent.

**COURTNEY HUDSON GOODSON, Justice, concurring.** I agree that substantial evidence supports appellant's conviction of rape. I also support the majority's conclusion that we must affirm the verdict-form issue that is raised on appeal because appellant wholly failed to support his argument with any citation to authority. I write separately to underscore the wisdom of refusing to address the merits of this point.

This court has been resolute in holding that we do not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Maiden v. State*, 2014 Ark. 294, 438 S.W.3d 263; *Britton v. State*, 2014 Ark. 192, 433 S.W.3d 856; *Green v. State*, 2012 Ark. 347, 423 S.W.3d 62; *Menne v. State*, 2012 Ark. 27, 386 S.W.3d 451; *Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001); *Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996). When an appellant fails to support his argument with

authority, he is effectively asking this court to research the law on the subject. *See Bonds v. State*, 296 Ark. 1, 751 S.W.2d 339 (1988); *see also Dixon v. State*, 260 Ark. 857, 862, 545 S.W.2d 606, 609 (1977) (stating that "[i]n effect the court is asked to research the law and to hold in favor of the appellant if the result of our labor so demands. We must decline that invitation"). However, this court does not research or develop arguments for appellants. *Turner v. State*, 2016 Ark. 96, 486 S.W.3d 757; *Hester v. State*, 362 Ark. 373, 208 S.W.3d 747 (2005).

We are asked to decide in this case the following issue of first impression: whether a circuit court falls into error by giving the jury a general verdict form when the State, in a single count, charges the commission of an offense by different means. In *Griffin v. United States*, 502 U.S. 46 (1991), the United States Supreme Court recognized that this charging practice has its origin in English common law. It also appears that the Supreme Court has upheld the use of a general verdict form when a defendant is so charged. *Schad v. Arizona*, 501 U.S. 624 (1991). Thus, it is not apparent without further research that the issue raised has merit. As this state's highest court, to definitively answer the question posed in this case would require us to research the treatment of this issue by our sister states and the federal courts. This would place us in the untenable position of developing the issue entirely on our own without any input from the parties. It is a far better practice to decide issues that are developed and presented to us in adversarial fashion. Thus, this court wisely declines to address arguments that are not supported by authority. We rightfully do so here.

**PAUL E. DANIELSON, Justice, dissenting.** I would reverse and remand for a new trial due to the circuit court's error in refusing to submit the verdict form by interrogatories.

As the majority notes, the State relied below on *Terry v. State*, 371 Ark. 50, 263 S.W.3d 528 (2007), for the proposition that a general verdict form, rather than interrogatories, should be given when a charge is tried on alternate theories. On appeal, the State continues to cite *Terry* and also points us to *Griffin v. United States*, 502 U.S. 46 (1991), and *Norris v. State*, 2010 Ark. 174, 368 S.W.3d 52. However, *Terry*, *Griffin*, and *Norris* do not stand for the proposition for which the State says they do. In both *Terry* and *Norris*, the defendants were charged with capital murder under two alternate theories: felony murder under Arkansas Code Annotated section 5–10–101(a)(1) and premeditated-and-deliberated murder under section 5–10–101(a)(4). *Norris*, 2010 Ark. 174, 368 S.W.3d 52; *Terry*, 371 Ark. 50, 263 S.W.3d 528. Both appeals involved challenges to the sufficiency of the evidence. This court held in both cases that because there was sufficient evidence to support the conviction for capital-felony murder under subsection (a)(1), there was no need to consider the sufficiency of the evidence supporting the alternative charge of premeditated-and-deliberated murder under subsection (a)(4). *Norris*, 2010 Ark. 174, 368 S.W.3d 52; *Terry*, 371 Ark. 50, 263 S.W.3d 528. "Given the general guilty verdict, we must conclude that there is sufficient evidence under one of the instructed elements for either subsection[] (a)(1) or (a)(4)." *Terry*, 371 Ark. at 56, 263 S.W.3d at 533. Both cases cited to *Griffin*, 502 U.S. 46, for the proposition that a general verdict of guilty is valid so long as it is legally supportable by one ground.

These cases simply did not address the issue that Ortega raises here, which concerns the propriety of submitting a general verdict form as opposed to interrogatories when a charge is tried on alternate theories. Neither *Terry* nor *Norris* contains any mention that the

defendant requested separate interrogatories, much less a discussion regarding whether it would have been proper to give them.[1]  Those cases addressed only the effect, on appeal, of the submission of a general verdict form, which is that a defendant challenging the sufficiency of the evidence must demonstrate that the evidence was insufficient under *both* alternate theories.  Thus, *Terry*, *Norris*, and *Griffin* actually illustrate Ortega's point:  without interrogatories, he was foreclosed from knowing on what basis the jury had convicted him, and he was consequently handicapped on appeal.  In my view, the use of a general verdict form in this case precluded Ortega from making a record, which is of particular concern in light of the fact that he specifically requested and proffered a verdict form containing interrogatories.

I am mindful that the majority rejects Ortega's argument on the basis that he fails to support it with citation to authority.  However, Ortega does argue that "[t]he State's reliance upon *Terry* is misplaced," and even the majority concedes that he is correct on that point; *Terry* does not address or support the State's position, and no other citation to authority is necessary to demonstrate that.  I find it troubling that the majority agrees with Ortega's point—that the circuit court relied on *Terry* to support a proposition for which it does not stand—yet refuses to acknowledge that the circuit court abused its discretion.  *See, e.g.*, *Samontry v. State*, 2012 Ark. 105, at 5, 387 S.W.3d 178, 182 ("An abuse of discretion may be manifested by an erroneous interpretation of the law.").  Accordingly, I dissent.

---

[1]In *Griffin*, which involved a multiple-object conspiracy charge, the Court noted that the defendant had "proposed special interrogatories asking the jury to identify the object or objects of the conspiracy of which she had knowledge."  502 U.S. at 48.  But this request was denied, and the Court did not discuss whether that denial was error.

HART, J., joins in this dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** I disagree with the majority's decision to bar Mr. Ortega's argument concerning his entitlement to submit an interrogatory to the jury. Not only was the bar inappropriate in this case, I believe his argument is well taken. In my view, this case should have been reversed and remanded for a new trial. I therefore respectfully dissent.

The majority relies on the bar stated in Kelly v. State, 350 Ark. 238, 85 S.W.3d 893 (2002), "This court has held that it will not consider an argument that presents no citation to authority or convincing argument." Accordingly, because "or" is disjunctive, to justify summarily disposing of an appellant's argument, an appellant must neither cite authority nor make a convincing argument. I submit that Mr. Ortega has done both.

Our rape statute states in pertinent part:

(a) A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person:
(1) By forcible compulsion;

(2) Who is incapable of consent because he or she is:

(A) Physically helpless;

Ark. Code Ann. § 5-14-103. In the case before us, the State put forth two inconsistent theories of how Mr. Ortega raped Ms. Jackson: by forcible compulsion and by taking advantage of a victim who was physically helpless.

At trial, relying on black-letter law, Mr. Ortega requested interrogatories to make sure that if he was convicted, the jury unanimously found beyond a reasonable doubt that

he committed each and every element of the crime. However, the State convinced the circuit court that Terry v. State, 371 Ark. 50, 263 S.W.3d 528 (2007) stands for the proposition that his requested interrogatories should not be given.

Citing Terry, Mr. Ortega demonstrates on appeal that Terry is completely silent on the issue of submitting interrogatories to the jury. Accordingly, it is disingenuous to assert that Mr. Ortega has cited no authority. On that basis alone, the bar is inappropriate.

Secondly, Mr. Ortega's argument on appeal, which I find convincing, is that, as in every criminal case, each element of the crime must be proved beyond a reasonable doubt, and without interrogatories, no one could be sure that all twelve jurors agreed on what the State had proved regarding Mr. Ortega's conduct. I needed no citation of authority for that proposition that in a criminal trial, the State must prove each element of a charged offense beyond a reasonable doubt. Nonetheless, I direct the majority to Pearls v. State, 266 Ark. 410, 584 S.W.2d 1 (1979) (reversing for a new trial because the jury instructions did not state that the State was required to prove "each material element of each crime charged" beyond a reasonable doubt).

I would reverse and remand this case to the circuit court.

DANIELSON, J., joins.

*Digby Law Firm*, by: *Bobby R. Digby II*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee